[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10856

_____

D.C. Docket No. 8:14-cv-00489-MSS-AAS

DAMION HAYES,

Petitioner - Appellee,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents - Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 25, 2021)

Before JORDAN, NEWSOM, and TJOFLAT, Circuit Judges.

JORDAN, Circuit Judge.

Damion Hayes is serving a life sentence in Florida following his convictions for attempted first-degree murder with a deadly weapon and armed trespassing. The convictions resulted from Mr. Hayes attacking and stabbing one of his neighbors, apparently without motive or provocation.

The district court granted Mr. Hayes habeas corpus relief in the form of a new trial, concluding that his counsel had rendered ineffective assistance by withdrawing an insanity defense on the first day of trial. The Secretary of Florida's Department of Corrections appeals, arguing that Mr. Hayes is not entitled to habeas relief under *Strickland v. Washington*, 466 U.S. 668 (1984), and 28 U.S.C. § 2254(d).

Following oral argument and a review of the record, we conclude based on *Knowles v. Mirzayance*, 556 U.S. 111, 127-28 (2009), that the district court applied an incorrect prejudice standard in analyzing Mr. Hayes' ineffectiveness claim. In our view, Mr. Hayes has not met his burden under the proper prejudice standard and so is not entitled to habeas relief. We therefore reverse.

## I

On the morning of January 23, 2002, Mr. Hayes attacked one of his neighbors without any provocation or apparent motive. The victim—who was 60 at the time—testified that she had never met Mr. Hayes, who lived down the street from her. Mr. Hayes did not ask her for money, did not say anything, and just "came at [her]." D.E. 34 at 2.

Using a knife, Mr. Hayes cut the victim in her throat, chest, arms, face, and head. He also beat her, causing her to suffer a concussion and lapse into a coma. *See id.* Shortly after the attack, Mr. Hayes was seen burning items in his backyard. Clothing recovered from the burn pile contained the victim's blood. The evening after the attack, Mr. Hayes confided in his cousin that "God made him do it." *Id.* at 2-3.

## A

Florida charged Mr. Hayes, then 20 years old, with attempted first-degree murder with a deadly weapon and armed trespassing. Mr. Hayes was evaluated several times prior to trial, found incompetent to proceed, and transferred to a state mental health facility in July of 2003. After months of treatment, the facility's psychology department and two court-appointed psychiatrists, Drs. Donald R. Taylor, Jr. and Sidney Merin, concluded that Mr. Hayes was competent to proceed

to trial. *See* D.E. 34 at 3. A third psychologist, Dr. Michael Gamache, found it "very difficult to arrive at any firm conclusions regarding Mr. Hayes' condition at the … time" due to his lack of cooperation. *See* D.E. 7, Order Denying Claim, Def. Exh. 8, at 874. Nevertheless, Mr. Hayes' competence and mental state continued to be in question, with his counsel remarking at a March 2004 hearing that "it's amazing to me totally that they have decreed that he is competent." D.E. 34 at 3. During a hearing in November of 2004, the trial court noted the reports of the doctors. Although "understanding [counsel's] dilemma," it found Mr. Hayes competent to stand trial. *Id.* at 4-5.

In December of 2004, counsel filed a notice of intent to rely on an insanity defense. The notice listed several witnesses, including Mr. Hayes' parents and medical professionals who had evaluated Mr. Hayes since his arrest. At a hearing in February of 2005, counsel renewed his objection to the trial court's finding that Mr. Hayes was competent to proceed to trial. The court responded that it had previously found Mr. Hayes competent—based on the opinions of three examining physicians—and that its conclusion had not changed. Counsel then noted that "[t]here is a defense of insanity at the time." *Id.* at 5. But he never obtained an expert opinion regarding Mr. Hayes' sanity at the time of the charged offenses.[1]

---

[1] To the extent Dr. Gamache was retained by the defense to evaluate Mr. Hayes' sanity at the time of the offense, he only rendered an opinion regarding Mr. Hayes' competency, which he referred

On February 23, 2005—the first day of trial—the prosecution announced that Mr. Hayes had withdrawn his insanity defense. *See id.* Mr. Hayes' counsel told the trial court that "on the 17th of [February of 2005,] … in this very courtroom I explained to [Mr. Hayes] in detail on the record … the notice of intent to rely upon the defense of insanity that I had filed … and he indicated that he wanted to proceed with a not guilty plea and at that time I withdrew that notice." *Id.* at 26. [2]

Mr. Hayes' counsel did not call any witnesses at trial. He instead attempted to present a misidentification defense through cross-examination. But the prosecution's evidence against Mr. Hayes was significant: (1) the victim identified him as the perpetrator; (2) Mr. Hayes' cousin testified that Mr. Hayes admitted that "God made him do it;" (3) Mr. Hayes burned his clothes on the night of the attack; (4) and the victim's blood was found in clothes at the burn pile. *See id.* at 5.

---

to as counsel's "particular concern." D.E. 7, Order Denying Claim, Def. Exh. 8, at 873. We therefore do not question the district court's conclusion that "the record includes no evidence … that counsel ever endeavored to have [Mr.] Hayes evaluated for sanity at the time of the crimes." D.E. 34 at 29.

[2] The record does not indicate that Mr. Hayes' counsel filed a written withdrawal of the insanity defense.  And although Mr. Hayes did not dispute counsel's assertions on the first day of trial, the transcript of the hearing on February 17, 2005, contains no discussion of the differences between a not guilty plea and a plea of not guilty by reason of insanity.  Indeed, the transcript suggests that Mr. Hayes still intended to proceed with the insanity defense as of that time. *See* D.E. 7, Exh. 1, Vol. 3, at 107-12 (discussing whether the court had made a final ruling on Mr. Hayes' competency and defense counsel stating "[t]here is a defense of insanity at the time.").

Following the prosecution's case-in-chief, Mr. Hayes' counsel moved for a judgment of acquittal only as to the attempted first-degree murder charge. Counsel argued that the prosecution had not introduced evidence that the attack was premeditated, particularly given that "[t]here was no provocation for the act." The prosecution responded that Mr. Hayes could not argue that he lacked the requisite state of mind because he had not introduced evidence "of any type of mental health issues [or] problems." The trial court denied the motion for judgment of acquittal and the jury found Mr. Hayes guilty of first-degree attempted murder with a deadly weapon and armed trespassing. After his conviction, Mr. Hayes obtained new counsel.

At the sentencing hearing, Mr. Hayes' new counsel called Dr. Michael Scott Maher, who testified about the extensive evidence of Mr. Hayes' past and present mental illnesses. Before announcing its sentence, the trial court stated that it "ha[d] no doubt in [its] mind that [Mr. Hayes] has mental problems" and that he is "mentally disturbed." D.E. 7, Exh. 1, Vol. III at 142. Citing concerns that Mr. Hayes would repeat such a violent offense, however, the court sentenced him to life imprisonment. *See id.* at 143.

**B**

After his convictions and sentence were affirmed on direct appeal, *see Hayes v. State*, 976 So.2d 1106 (Fla. 2d DCA 2008) (table), Mr. Hayes filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. Among other things, Mr. Hayes argued that his original trial counsel was ineffective for abandoning the insanity defense. Mr. Hayes asserted that the trial record—and in particular the fact that he was deemed incompetent to proceed for a time—demonstrated that he was mentally ill. He also argued that the record did not support counsel's representation on the first day of trial that he did not want to pursue an insanity defense. And even if he had not wanted to pursue an insanity defense, Mr. Hayes maintained, counsel's abandonment of the defense was unreasonable under the circumstances. He asserted that, had the insanity defense been presented, there was a reasonable probability that the jury would have reached a verdict of not guilty. The post-conviction court summarily denied the Rule 3.850 motion.

On appeal, the Second District Court of Appeal reversed. *See Hayes v. State*, 56 So. 3d 72 (Fla. 2d DCA 2011) (per curiam). Although the record suggested that counsel was following Mr. Hayes' wishes in abandoning the insanity defense, there was nothing indicating that counsel thoroughly discussed that decision with Mr. Hayes. *See id.* at 73. The Second District observed that, "in light of [Mr.] Hayes' history of mental illness, the evidence against him, and his fragile mental state prior

7

to trial," it was not clear that counsel's decision to withdraw the defense was reasonable. *See id.* at 74. As to prejudice, the Second District explained that insanity was likely Mr. Hayes' only viable defense. *See id.* at 74. It therefore remanded to the post-conviction court with instructions to "hold an evidentiary hearing to determine whether counsel's abandonment of the insanity defense was reasonable under the specific facts of this case." *Id.*

The post-conviction court then held an evidentiary hearing, at which Mr. Hayes introduced several exhibits. These included medical reports from Drs. Merin and Taylor, and records from the state hospital where Mr. Hayes remained during the time he was deemed incompetent to stand trial.

Mr. Hayes also called his trial counsel as a witness at the hearing. *See* D.E. 7, Order Denying Claim, Transcript of Proceedings, at 714-32. Counsel testified that he had concerns about Mr. Hayes' mental capacity throughout the case, leading him to file motions requesting that Mr. Hayes' competency be evaluated. Counsel also confirmed that he initially filed a notice of intent to rely on an insanity defense, but said he subsequently abandoned that defense at Mr. Hayes' request. He stated that his decision was a tactical one.

Counsel explained that he had an on-the-record colloquy with Mr. Hayes and the trial court during which Mr. Hayes expressed his desire not to pursue a defense

8

of not guilty by reason of insanity. Counsel said that he spoke with Mr. Hayes personally prior to the colloquy, and that Mr. Hayes "was firm in his position that he was not guilty." Counsel also stated that he had "very little specific recollection" prior to his memory being refreshed by the transcript.

When asked whether he thought Mr. Hayes understood the difference between a standard not-guilty plea and a defense of not guilty by reason of insanity, counsel responded: "Well, you know, that's very hard for me to divine." He noted that "at least [one mental health expert] said [Mr. Hayes] might have been insane at the time of the commission and couldn't determine the difference [between] right and wrong." Counsel stated, however, that because "[his] conversations with [Mr. Hayes] indicated … that he certainly had a good understanding of what was happening throughout the trial," he "concluded that [Mr. Hayes] was able to make an educated decision with respect to this issue of insanity vis-à-vis not guilty." When asked whether he had explained to Mr. Hayes the difference between not guilty and not guilty by reason of insanity, counsel stated: "I don't recall having it in that sense. I was fully convinced that he knew the difference between not guilty by reason of insanity and not guilty. Why otherwise would he be so adamant about his position of not guilty?"

On redirect, counsel was again asked whether he had explained to Mr. Hayes the difference between being found not guilty and being found not guilty by reason

of insanity. Counsel said that he believed "that was contained somewhat, if not explicitly in my letter to him of August 19th, 2002." He also referenced discussing it during two on-the-record colloquies on February 17, 2005, and February 24, 2005. Counsel read the contents of the August 19 letter aloud at the hearing, but it made no reference to Mr. Hayes' insanity defense. Instead, the letter asked Mr. Hayes only to confirm in writing that he did not wish to plead guilty to the first-degree attempted murder charge and did not mention the word "insanity." Similarly, the transcripts of the two referenced hearings do not contain a discussion of the difference between the two types of pleas.

Mr. Hayes did not testify at the evidentiary hearing. And he did not present any expert testimony about whether he was insane at the time of the attack.

The post-conviction court denied Mr. Hayes' ineffective assistance of counsel claim. It concluded that the abandonment of the insanity defense was reasonable because (1) counsel had "extensive criminal defense experience;" (2) counsel concluded that Mr. Hayes did not want to pursue the defense after "extensive consultation;" (3) Mr. Hayes was found competent by a number of experts; and (4) the evidence showed that Mr. Hayes was aware of what he had done. The court added that, even if counsel's decision demonstrated bad judgment, it was a "tactical decision" and therefore "post[-]conviction relief would not be justified." The court did not address the matter of prejudice.

10

Mr. Hayes again appealed. This time the Second District summarily affirmed. *See Hayes v. State*, 129 So.3d 368 (Fla. 2d DCA 2013) (table).

## C

After exhausting his state remedies, Mr. Hayes filed a habeas corpus petition in federal district court. *See* 28 U.S.C. § 2254. His only claim was that trial counsel rendered ineffective assistance by withdrawing the insanity defense. After oral argument, the district court granted the petition.

The district court found that the record did not support counsel's testimony that Mr. Hayes wished to abandon the insanity defense, or that he understood the difference between not guilty and not guilty by reason of insanity. *See* D.E. 34 at 23. Counsel had testified that he explained the difference to Mr. Hayes (1) during two on-the-record colloquies on February 17, 2005, and February 24, 2005; and (2) in his August 19, 2002, letter to Mr. Hayes. The district court observed, however, that neither the transcripts of the two colloquies nor the letter contained any such discussion. *See id.* at 23-28. The district court also noted that there was no evidence that counsel ever endeavored to have Mr. Hayes evaluated as to his sanity at the time of the attack. *See id.* at 29. As a result, the district court ruled that the post-conviction court's conclusion that counsel made a reasonable tactical decision to abandon the

11

insanity defense was based on an unreasonable determination of the facts. *See id.* at 33-34.

The district court then conducted a *de novo* review of Mr. Hayes' ineffective assistance of counsel claim. *See id.* at 34. It ruled that counsel's performance was deficient because there was nothing in the record to indicate that Mr. Hayes chose to waive the insanity defense. *See id.* at 36. Indeed, the district court explained that Mr. Hayes could not have knowingly waived the insanity defense because counsel admitted that he "fail[ed] to discuss with [him] the difference between a straight not guilty defense and a defense of not guilty by reason of insanity." *Id.*

In addition, the district court concluded that Mr. Hayes suffered prejudice as a result of counsel's deficient performance because an insanity theory was "likely [his] only viable defense." *Id.* at 37. The district court went on to explain that the unreasonable withdrawal of the insanity defense undermined its confidence in the outcome. *See id.*

The Secretary filed a timely notice of appeal, and we heard oral argument earlier this year.

## II

Our review of the district court's order granting habeas relief is plenary. *See, e.g.*, *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010). Mr. Hayes must satisfy

both the performance and prejudice prongs of *Strickland v. Washington*, 466 U.S. 668 (1984), to prevail on his ineffectiveness claim. *See Lucas v. Secretary*, 682 F.3d 1342, 1355 (11th Cir. 2012). To resolve this appeal we need only consider the district court's prejudice ruling. We do not address or discuss trial counsel's performance or the district court's ruling that the last-minute withdrawal of the insanity defense was deficient.

## A

Normally, we substantively review the prejudice prong of a *Strickland* ineffectiveness claim under the deference required by 28 U.S.C. § 2254(d). *See Shinn v. Kayer*, 141 S.Ct. 517, 524-25 (2020); *Harrington v. Richter*, 562 U.S. 86, 101 (2011). But here the post-conviction court did not address the prejudice prong of *Strickland*, and the Second District's summary affirmance is presumed to be based on the adequate performance ground articulated by the post-conviction court. *See Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018). Because the Secretary has not rebutted that presumption, our review of prejudice—a mixed and predictive question of law and fact—is *de novo*. *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, and so we examine this element of the *Strickland* claim de novo.") (citation omitted).

13

To establish prejudice, Mr. Hayes must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is less than a preponderance. *See id.* at 693 (rejecting a "more likely than not" standard). It is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694. *See also Harrington*, 562 U.S. at 111-12 ("[T]he difference between *Strickland*'s prejudice standard and a more-probable-than not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable.") (citation omitted).

In *Knowles v. Mirzayance*, 556 U.S. 111, 123-28 (2009), a case involving an attorney's recommendation that a defendant abandon a defense of not guilty by reason of insanity, the Supreme Court alternatively addressed the issue of *Strickland* prejudice *de novo*. In doing so, the Court rejected the Ninth Circuit's ruling that abandonment of the only viable defense could alone constitute prejudice for an ineffective assistance of counsel claim. *See id.* at 127. The Court explained that even where no other viable defenses exist, a defendant must still show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). "To prevail on his ineffective-assistance claim," therefore, the petitioner had to show "that there is

a 'reasonable probability' that he would have prevailed on his insanity defense had

he pursued it." *Id.*

The district court appears to have concluded that Mr. Hayes suffered prejudice

based on counsel's abandonment of the only viable defense available:

> This Court agrees with the state appellate court's observation in its order remanding [Mr.] Hayes' Rule 3.850 motion to the state post-conviction court for an evidentiary hearing that 'an insanity defense was likely [Mr.] Hayes' [s] only viable defense.' Counsel's decision to abandon that defense prejudiced [Mr.] Hayes. *See, e.g.*, *Tejada v. DuBois*, 142 F.3d 18, 25 (1st Cir. 1998) ("Depriving a criminal defendant of his only viable defense certainly renders the resultant trial 'fundamentally unfair or unreliable' as demanded by *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)"); *Walker v. Hoffner*, 534 F. App'x 406, 412-13 (6th Cir. 2013) ("Defendant was not required to show that but for the failure to present the insanity defense, he would have been acquitted, but only that because he was unable to present such a defense, his trial was unfair such that we can no longer be confident in the verdict."). [Mr.] Hayes' inability-due to counsel's deficient performance and the prejudice resulting therefrom-to have a jury consider an insanity defense entitles [Mr.] Hayes to the writ.

D.E. 34 at 37.

This excerpt indicates that the district court never analyzed whether Mr. Hayes

could show a reasonable probability of success on his insanity defense, and instead

relied on a prejudice test that was rejected by the Supreme Court in *Mirzayance*. We

now conduct the required prejudice analysis.

15

**B**

In 2000, the Florida Legislature enacted a statute setting out the requirements for the insanity defense in criminal cases. *See* Fla. Stat. § 775.027. This statute essentially codified Florida's common-law insanity standard, which was based on *M'Naghten's Case*, 8 E.R. 718 (House of Lords 1843). *See Rodriguez v. State*, 172 So.3d 540, 543 (Fla. 5th DCA 2015); *Cotto v. State*, 89 So.3d 1025, 1028 n.3 (Fla. 3d DCA 2012), *approved on other grounds*, 139 So.3d 283 (Fla. 2014).

In relevant part, § 775.027(1) provides that "[a]ll persons are presumed to be sane," and makes insanity an affirmative defense. To establish the defense, a defendant bears the burden of proving a number of things by "clear and convincing evidence." § 775.027(2). First, he must show that he "had a mental infirmity, disease, or defect." § 775.027(1)(a). Second, he must demonstrate that, "[b]ecause of this condition," he either "[d]id not know what he … was doing or its consequences," or, if he knew what he was doing and its consequences, that he "did not know that what he … was doing was wrong." § 775.027(1)(b)(1)-(2). Mr. Hayes' offenses took place in 2002, so any insanity defense would have had to satisfy § 775.027's requirements.

The question for us is whether Mr. Hayes can show a reasonable probability that a jury would have found by clear and convincing evidence that he met the insanity standard at the time of the charged offenses. Under Florida law, clear and

16

convincing evidence is "evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief, without hesitation, about the matter in issue." Fla. Std. Jury Instr. (Crim.) 3.6(a). *See Pewo v. State*, 177 So.3d 32, 33-34 (Fla. 2d DCA 2015) (upholding the use of this instruction with respect to an insanity defense because the definition was consistent with Florida law).

On his side of the evidentiary ledger, the record contains lay testimony that paints a picture of Mr. Hayes as a deeply mentally ill individual at the time of the crimes. His parents, for example, told investigators about disturbed behavior by Mr. Hayes in the months before the attack, including putting holes in walls, speaking with himself, using a baseball bat to destroy a TV, hearing voices so much that he had to cover his ears to refrain from hearing them, wearing headphones while sleeping to drown out those voices, digging holes in the ground for no reason, cutting holes in a wire fence, wanting to see a dead person, sitting in the dark and isolating himself, and crying spontaneously. The unusual behavior continued after the attack, as Mr. Hayes told his cousin that "God made him do it." D.E. 7, Exh. 20, at 267. And, as noted, there was no apparent provocation or motive for the attack.

In Florida, competent lay testimony—such as that provided by Mr. Hayes' parents—can create a jury issue as to insanity. *See State v. Clark*, 745 So.2d 1116, 1117 (Fla. 4th DCA 1999); *State v. Van Horn*, 528 So.2d 529, 530 (Fla. 2d DCA 1988); *Powell v. State*, 373 So.2d 73, 74 (Fla. 1st DCA 1979). But here such

17

testimony does not establish a reasonable probability that a jury would have found Mr. Hayes insane in January of 2002 by clear and convincing evidence. For starters, Florida law presumed that Mr. Hayes was sane at the time of the offenses, *see* § 775.027(1)(a), and no one testified that Mr. Hayes was unable to distinguish right from wrong. In addition, Mr. Hayes burned his clothes after the attack, and such behavior indicates that he understood that he had done something wrong and that he wanted to try to cover up his actions. *See United States v. Israel*, 838 F. App'x 856, 869 (5th Cir. 2020) (explaining, in discussing an ineffectiveness claim by a federal prisoner under 28 U.S.C. § 2255 based on a failure to investigate an insanity defense, that a "defendant's concealment of a crime can provide evidence of his capacity").

In addition to lay reports of bizarre behavior indicative of mental illness leading up to and continuing after the attack, the record also contains post-offense psychological evidence. As noted, Mr. Hayes was found to be incompetent in July of 2003 and transferred to a mental health facility. Dr. Gamache, in a letter to counsel in February of 2003, concluded that there was "a reasonable probability that Mr. Hayes is mentally ill." D.E. 7, Order Denying Claim, Def. Exh. 8, at 873-75. Dr. Taylor went further in his May 2003 evaluation. He stated that Mr. Hayes' behavior in the months leading up to the offenses was "suggestive of psychosis," and that "it is likely that [he] experienced a Substance Induced Psychotic Disorder or early signs and symptoms of a psychotic disorder such as Schizophrenia." As a result, he opined

18

that Mr. Hayes "would benefit from a trial of antipsychotic medication in a therapeutic setting." D.E. 7, Order Denying Claim, Def. Exh. 9, at 884-85. During his time at the mental health facility, the medical staff noted that Mr. Hayes had "a great deal of trouble developing even a rudimentary understanding of the legal system and meeting the criteria to become competent to proceed," D.E. 7, Order Denying Claim, Def. Exh. 10, at 850, and observed him "sitting in his room with his blanket draped over his body looking out the window for extended periods of time." *Id.* at 892.

After Mr. Hayes obtained new counsel, he introduced some additional medical evidence at sentencing. Dr. Maher testified that all three doctors who had previously evaluated Mr. Hayes (Drs. Taylor, Merin, and Gamache) "found substantial evidence of genuine mental illness apart from his drug abuse history," and that the state hospital had concluded that "[Mr. Hayes] needed to be treated with anti-psychotic medication and anti-depressant medication." Dr. Maher concluded:

> What I can offer to the Court is that [Mr. Hayes] certainly appears to have a genuine and major psychiatric disorder[. An] underl[ying] psychiatric disorder which involves symptoms of psychosis, impulsiveness and is likely to have been related to both of these offenses … with regard to apparent irrational and impulsive motivation behind those behaviors.

D.E. 7, Order Denying Claim, Def. Exh. 5, at 833. When asked by the prosecution whether he believed Mr. Hayes knew right from wrong at the time of his offenses,

Dr. Maher responded in this way: "I think he knew that he was hurting [the victim] and I don't know he knew as to what extent it was unlawful or improper." *Id.* at 834. Dr. Maher conceded, however, that he "ha[dn't] evaluated that issue extensively." *Id*. As noted, before announcing its sentence, the trial court stated that it "ha[d] no doubt in [its] mind that [Mr. Hayes] has mental problems" and that he is "mentally disturbed." D.E. 7, Exh. 1, Vol. III, at 142.

With respect to the medical evidence, the problem for Mr. Hayes is twofold. First, there was no expert evaluation or opinion on the issue of sanity. And that makes the insanity claim weaker. Second, all of the medical evidence related to competence to stand trial, which was based on Mr. Hayes' mental condition more than a year after the attack. The competency standard asks whether a defendant, at the time of trial (or at the time of the relevant proceeding) has the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and "whether he has a rational as well as factual understanding of the proceedings against him." *Peede v. State*, 955 So.2d 480, 488 (Fla. 2007). Insanity, on the other hand, is determined at the time of the charged offense and is analyzed under a different standard. *See* Fla. Stat. § 775.027(1)(a)-(b). That is why the Florida Supreme Court has explained that "[w]hether a defendant is competent to stand trial is not necessarily relevant on the question of whether [he] was insane at the time of the [offense]. Competency to stand trial and insanity at the time of the

offense involve the defendant's mental state at separate and distinct points in time." *Patton v. State*, 784 So.2d 380, 387 (Fla. 2000). *Cf. United States v. Fortune*, 513 F.2d 883, 888-89 (5th Cir. 1975) (noting that introduction of evidence on the issue of competency "may indeed have a prejudicial effect on a defendant's right to a fair trial on the issue of sanity"). So the medical testimony addressing whether Mr. Hayes was competent in 2003 says little about whether he was insane in January of 2002.

Even assuming that the medical evidence on competency was highly relevant to the question of sanity, it was guarded. Dr. Maher, for example, explained that he was unsure whether Mr. Hayes knew right from wrong, and admitted that he had not analyzed the matter extensively. Dr. Merin, in his competency evaluation, concluded that there was "no evidence of manic behavior or thought processes" and that Mr. Hayes "was competent on the date and at the time" of the alleged offenses. *See* D.E. 7, Order Denying Claim, Def. Exh. 6, at 862-66. Again, competence is not the same as sanity, but if competency matters, Dr. Merin's opinion casts some doubt on an insanity claim. We note, as well, that during his entire time at the mental health facility Mr. Hayes was never given a formal diagnosis of a mental infirmity, disease, or defect as of January of 2002. *See* § 775.027(1)(a). *See also United States v. Cox*, 826 F.2d 1518, 1526 (6th Cir. 1987) ("Cox has neither claimed nor made any showing that his particular of mental illness rendered him unable at the time of the bank robbery 'to appreciate the nature and quality or the wrongfulness of his acts.'

21

Thus, he has failed to establish a reasonable probability that if an insanity defense had been pursued at trial, the result of the proceeding would have been different.").[3]

Although we have discussed the lay testimony and the medical evidence bearing on the question of insanity seperately, we recognize that our review of the record must be holistic. We have therefore considered all of the testimony and evidence together in analyzing *Strickland* prejudice. *Cf. District of Columbia v. Westby*, 138 S.Ct. 577, 588 (2018) (explaining that, where the "totality of the circumstances" must be considered, facts cannot be viewed in isolation and a "divide-and-conquer analysis" is inappropriate). Having done so, and taking into account the clear and convincing standard required under Florida law, we conclude that Mr. Hayes has not shown a reasonable probability that his insanity defense would have been successful if presented to the jury. *See Mirzayance*, 556 U.S. at 127.

---

[3] Though it is not directly on point because it involved the application of AEDPA deference under § 2254(d), the Ninth Circuit's discussion in *Bemore v. Chappell*, 788 F.3d 1151, 1168-69 (9th Cir. 2015), is also somewhat instructive: "Bemore did present some evidence to the state habeas court tending to show that the[ ] standards [for a mental health defense under California law] might have been met. But given the evidence suggesting Muck's murder was deliberate and premeditated, the record does not provide sufficient evidence to demonstrate that any reasonable jurist would have concluded that a guilt phase mental health defense was reasonably likely to have been successful in avoiding a guilty verdict. Perhaps most notably, no expert testimony was presented on habeas indicating that, had follow-up mental health investigation occurred, counsel could have presented evidence sufficient to establish a mental health defense to first-degree murder."

## III

Like the trial court which sentenced him, and like the district court, we acknowledge that Mr. Hayes has mental issues. But the issue before us is whether he can establish a reasonable probability that a jury would have found by clear and convincing evidence that he was insane in January of 2002, when he attacked his neighbor. On this record, we conclude that he cannot. The district court's grant of habeas corpus relief to Mr. Hayes is therefore reversed.

**REVERSED.**

NEWSOM, Circuit Judge, concurring:

The Supreme Court has said that "[c]ourts can … deny writs of habeas corpus under [28 U.S.C.] § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010). Today, this Court holds that Hayes's *Strickland* claim fails under de novo review, and I agree.[1] Accordingly, I concur in the Court's judgment reversing the district court's decision granting Hayes habeas corpus relief.

---

[1] One quick thing at the outset: The Court justifies de novo review of the state courts' "prejudice" determination on the ground that the state courts "did not address [that] prong of *Strickland*." Maj. Op. at 13. For support, the Court—quite rightly—cites the Supreme Court's decision in *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, and so we examine this element of the *Strickland* claim *de novo*."). I would simply note that, in that respect, *Rompilla* seems to be in some tension with the later decision in *Harrington v. Richter*, in which the Court said the following:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." … Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. *This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.*

562 U.S. 86, 98 (2011) (emphasis added). Now, to be fair, there may also be some tension between *Richter* and the Court's even more recent decision in *Wilson v. Sellers*, 138 S. Ct. 1188 (2018), which—albeit in a different context—seemed to privilege a state court's "reasons" over its "decision." In any event, the question whether a federal court should apply AEDPA deference to a state court's overarching "decision" of a habeas petitioner's *Strickland* "claim," or instead only to the particular components of that "claim" that the state court specifically addressed, I leave for another day and for those higher on the food chain. For our purposes, I agree that *Rompilla* is on point, binds us, and permits de novo review of the state courts' prejudice determination here. *Cf. Knight v. Fla. Dep't of Corr.*, 958 F.3d 1035, 1045–46 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2471 (2021) (Newsom, J.).

It seems to me, though, that there is an antecedent, and more fundamental, problem—actually, two interrelated problems—with the district court's decision. First, while the district court purported to apply 28 U.S.C. § 2254(e)(1), it failed to accord the state court's factual determinations—including an explicit credibility determination—a presumption of correctness, rebuttable only by "clear and convincing evidence," as the text of that provision requires. Second, the district court compounded its initial error by repeatedly conflating § 2254(e)(1) and § 2254(d)(2), and concluding—if I'm understanding its decision correctly—that its finding that the state court's credibility determination was erroneous under subsection (e)(1) necessitated a holding that the state court's "decision" was "based on" an "unreasonable determination of the facts" within the meaning of subsection (d)(2). I write separately to explain the district court's errors and, I hope, to shed some light on how subsections (d)(2) and (e)(1) relate to each other.

**I**

The district court's refusal to apply AEDPA deference, and its ensuing decision to grant habeas corpus relief, stemmed from its skepticism of Hayes's trial counsel's testimony at the state post-conviction hearing. There, Hayes's lawyer testified that, in fact, he had explained to Hayes the pros and cons of forgoing an insanity defense in favor of a straight not-guilty plea. The state post-conviction court expressly found the lawyer's testimony "credible," but the district court concluded

25

otherwise. Before addressing the district court's decision, let me unpack the key pieces of the state-court record bearing on that issue.

At a pretrial hearing on February 17, 2005, the state court ruled that Hayes was competent to stand trial. At the same hearing, Hayes's trial counsel, Norman Cannella, informed the court that he intended to pursue an insanity defense. Not quite a week later, though, on February 23—the first day of Hayes's trial—the prosecutor reported that Cannella had withdrawn the insanity defense. The next day, at a bench conference following the denial of Hayes's motion for judgment of acquittal, the trial judge asked Cannella whether Hayes intended to testify in his own defense. Cannella thereafter engaged Hayes in an open-court colloquy advising him of his right to testify, and Hayes confirmed that he didn't want to. Importantly for our purposes, as part of that same conference, the judge then had a separate exchange with Cannella about Hayes's intentions vis-à-vis the insanity defense:

> COURT: I think [you] discussed with [your] client before even starting the trial what type of defense that he wanted to proceed with and I think he indicated he wanted a defense that he was not guilty.

> DEFENSE COUNSEL: That is absolutely correct and on the 17th of this month to be exact in this very courtroom I explained to him in detail on the record and in front of Your Honor and [the prosecutor] the notice of intent to rely upon the defense of insanity that I had filed explaining to him in detail and he indicated that he wanted to proceed with a not guilty plea and at that time I withdrew the notice.

At the conclusion of the trial, a jury convicted Hayes of attempted first-degree murder and armed trespassing, and the trial judge sentenced him to life in prison.

26

The state appellate court affirmed Hayes's conviction and sentence. *Hayes v. State*, 976 So. 2d 1106 (Fla. Dist. Ct. App. 2008).

Hayes later filed a motion for state post-conviction relief on the ground that Cannella had provided constitutionally ineffective assistance of counsel when he abandoned the insanity defense. Following an initial denial, an appeal, and a remand, the state circuit court held an evidentiary hearing on Hayes's ineffective-assistance claim at which Cannella was the lone witness. In its order denying Hayes's post-conviction motion, the circuit court specifically addressed Cannella's "representations … that he decided to abandon the defense of insanity because [Hayes] wanted to pursue a defense of not guilty." The circuit court quoted extensively from Cannella's sworn testimony, in which he twice referred to an in-court discussion with Hayes about the abandonment of an insanity defense. Because the full context is important, I will block quote the passage, as the circuit court did, adding my own emphasis:

> CANNELLA: And I believe that, my recollection of that review just moments ago, was that *there was a colloquy between myself and Mr. Hayes and the Court regarding this issue of abandonment of the defense*. I believe that I told the Court that I was acting in part upon the desires of Mr. Hayes. That he did not want to proceed with a defense of insanity, that he was not guilty. Consequently, I made what I would consider to be a tactical decision. And I based that decision upon a number of things: One, the wishes of the client, who had previously, on a number of occasions, been found to be competent by a number of experts. Secondly, I was at that point in time well aware of the facts and circumstances, which had been brought forth before the jury. Those facts and circumstances led me to the conclusion, one, that

27

he would be convicted, which he ultimately was. And two, that the evidence showed that he did certain things after the alleged crime that would indicate that he was well aware of what he had done, and had taken certain steps to cover up what he had done. My recollection, now that I think about that case, is that bloody clothing was placed in a washing machine and maybe even some Clorox was used. Secondly, that a knife was disposed of in some fashion. And third, that a fire was started outside the house where my recollection tells me that certain pieces of evidence were destroyed in that fire. I put all those things together, and based upon a number of years of doing nothing but criminal work, I reached the conclusion and the position that I would honor his request not to go forth with the defense of insanity. Now, I must tell you that I also had conversations with most everyone that was listed on the notice of intent to use the defense of insanity. And I made some notes when I talked to those people, and I reviewed them today. And they, those witnesses were *de minimis* with respect to the issue of his ability to determine right from wrong in the period of time close to that of the crime. So with all those things in mind, I reached the decision that I would honor his request and withdrew the motion. And as a matter of fact, I think my recollection of what was given to me just moments ago is that ***I had a colloquy with him, Mr. Hayes, and the judge, regarding this very issue of whether or not he wanted to proceed***. And I think Mr. Hayes was firm in his position that he was not guilty.

The circuit court's order continued, quoting yet another portion of Cannella's testimony in which he referred to the colloquy: "When asked if he recalled having a conversation with [Hayes] about the decision … whether to pursue a defense of not guilty by reason of insanity or an ordinary not guilty defense, [Cannella] responded, 'Yes, immediately prior to ***the on the record colloquy***, I had spoken to him.'"

At least three times, then, Cannella testified under oath that he had an in-court colloquy with Hayes regarding the abandonment of the insanity defense. Having

28

reviewed Cannella's testimony and the other record evidence, the circuit court expressly "f[ound] Mr. Cannella's testimony to be credible." In particular, the court found that "after extensive consultation with [Hayes], Mr. Cannella made a reasonable, tactical decision to abandon the insanity defense … ." Accordingly, the circuit court denied Hayes's request for post-conviction relief. The state appellate court affirmed. *Hayes v. State*, 129 So. 3d 368 (Fla. Dist. Ct. App. 2013).[2]

Which brings me, at last, to the federal district court's decision before us on appeal. As revealed by both the transcript of the hearing that it conducted and its written order, the district court got tripped up—and more than a little frustrated—by the lack of documentary proof corroborating Cannella's state-court testimony that he had an insanity-related colloquy with Hayes. I'll start with the hearing, where the district court repeatedly (and pretty brusquely) pressed the state's lawyer for evidence—over and above Cannella's sworn testimony—that the colloquy in fact occurred. One illustrative example:

> THE COURT: That's a yes or a no. Is there an on the record colloquy with the Court and Mr. Hayes and Mr. Cannella concerning the waiver of the insanity defense?
>
> [STATE'S ATTORNEY]: I would say yes.

---

[2] Because the appellate court summarily affirmed the state post-conviction court's order, the relevant "decision" for our review under AEDPA is the state post-conviction court's order. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (explaining that, where a higher state court affirms without explanation, a "federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning").

THE COURT:  Show it to me.

[STATE'S ATTORNEY]:  If you look –

THE COURT:  Show it to me, the record cite.

[STATE'S ATTORNEY]:  I'd have to go through my –

THE COURT:  That's why we're here.

[STATE'S ATTORNEY]:  Okay.  May I first say –

THE COURT:  No, you may not first say anything.  You may give me the record cite.[3]

Later, the district court candidly confessed its disinclination to believe Cannella's testimony that he had the colloquy—notwithstanding the state court's acceptance of it—absent additional corroboration.  In particular, the district court

---

[3] The district court's consternation seemed to spill over into other issues, as well.  At another point in the hearing, the state's lawyer struggled to find a transcript reference establishing that Cannella had a medical expert evaluate Hayes's sanity at the time of the offense.  When she thought that she had found the reference, she exclaimed, "Yay!"  The district court rejoined:

THE COURT:  Are you serious?

[STATE'S ATTORNEY]:  Oh, I'm sorry, Your Honor.  I apologize.  I was worried I couldn't find it.  I totally –

THE COURT:  Well, this is a Federal Court, not a football field.

[STATE'S ATTORNEY]:  You know what, I apologize to this Court.  I was just nervous about finding it.  I take this hearing very seriously.

THE COURT:  Well, this is a person's life at stake.

[STATE'S ATTORNEY]:  I'm so sorry, Your Honor.

THE COURT:  Well, get yourself together then.

said that "there [was] nothing that happens between the 17th and the 24th [of February] on the record that would support" Cannella's testimony:

> I mean, it's just not there.  The only exception being the one thing that is not challenged by some directly contradicting evidence and that is Mr. Cannella's statement that there was a conversation, and I don't know anything else that's in this record that supports what Mr. Cannella says happened.

And on the district court's view, it seems, the state *had* to produce that kind of corroborating evidence to clothe the state court's factual findings in the deference that AEDPA prescribes:

> The trial court's finding—it's not magic because they say it, it's magic because it is supported by competent evidence.  Evidentiary findings are entitled to deference, credibility findings are entitled to deference, but the deference is based upon showing that it's supported by substantial competent evidence, which "substantial" doesn't mean what normal people think it means, it means some scintilla of evidence.

The district court's written order is more of the same.  The court acknowledged Cannella's testimony at the state post-conviction hearing:  "Counsel represented to the state post-conviction court that he decided to abandon Hayes's insanity defense based, in part, on a colloquy between himself, the trial judge, and Hayes, in which Hayes allegedly chose to pursue a straight 'not guilty' defense."  The district court even quoted part of the same trial-court exchange that the post-conviction court had cited, in which, to repeat, Cannella had said the following:

> [O]n the 17th of this month to be exact in this very courtroom I explained to him in detail and in front of Your Honor and [the prosecutor] the notice of intent to rely upon the defense of insanity that

31

I had filed explaining to him in detail and he indicated that he wanted to proceed with a not guilty plea and at that time I withdrew the notice.

For the district court, though, neither that exchange during the trial nor Cannella's state post-conviction testimony was enough. In particular, the district court said—as it had forecast in its comments during the hearing—that the trial transcript did "not support [Cannella's] assertion" that he had an in-court colloquy with Hayes about the insanity defense. More particularly still, the court fixated on the fact that the record of proceedings on February 17, 2005, to which Cannella had adverted in his statement to the trial court, didn't itself reveal any such colloquy. From that premise, and notwithstanding Cannella's later testimony during post-conviction proceedings, the district court concluded that "[c]learly there was no on-the-record discussion with Hayes about the insanity defense (or any other issue), nor was there any indication that Hayes wanted to proceed with a not guilty defense." The court once again faulted the state's lawyer for her inability to muster documentary evidence to corroborate Cannella's testimony: "When asked specifically to show this Court excerpts of the record which supported her argument to the state appellate court that counsel had discussed with Hayes the difference between a 'not guilty' defense and a 'not guilty by reason of insanity' defense, [the state's lawyer] could not do so."

Having concluded that the state post-conviction court was wrong to credit Cannella's testimony about the colloquy, the district court proceeded to hold that

32

"[t]he state post-conviction court unreasonably determined the facts" and, accordingly, that its decision rejecting Hayes's *Strickland* claim was not entitled to AEDPA deference. In so holding, the district court cited both—and seemed to shuffle back and forth between—28 U.S.C. § 2254(d)(2) and 28 U.S.C. § 2254(e)(1). And in the end, the court concluded that because of the absence of documentary proof corroborating Cannella's testimony, Hayes had "establishe[d] by clear and convincing evidence that the state court's factual findings that counsel's testimony was credible and that his withdrawal of the insanity defense was a tactical decision are unreasonable because neither finding is supported by the record."

Having freed itself of the obligation to review the state court's decision deferentially under AEDPA, the district court proceeded to conclude, on de novo review, that Hayes was entitled to relief on his *Strickland* claim.

*   *   *

A brief housekeeping coda, before I proceed. We now know that the district court was right about a couple of things: First, Cannella didn't have an in-court insanity-related colloquy with Hayes on February 17, 2005, as he mistakenly stated in his exchange with the judge during Hayes's trial. Second, the federal-habeas record doesn't include a transcript memorializing any such colloquy. That's not to say, however, as the district court intimated, that the colloquy never occurred. To the contrary, we now know, with the benefit of hindsight, that an in-court colloquy

33

*did* occur—but on February 21, not February 17. And the transcript of that colloquy wasn't in the habeas record because the state (presumably thrown off by Cannella's confusion over dates in his statements during trial) simply failed to include it.

All of this is neither here nor there for purposes of the discussion that follows—for better or worse, the transcript evidencing Cannella's February 21 colloquy isn't properly before us. After the state filed its notice of appeal in this case, it located the February 21 transcript and moved the district court for relief under Federal Rule of Civil Procedure 60(b). The district court denied the state's motion and, for reasons unexplained, the state failed to appeal that denial. So, while it's helpful to know that a simple misunderstanding led to all the consternation over the existence (or non-existence) of documentary proof that the insanity-related colloquy occurred, the record for today's purposes is precisely as it was when the district court rendered its decision. That record, which I accept, shows (1) that Cannella clearly testified during state post-conviction proceedings that he had the colloquy with Hayes but (2) that there was no hard documentary evidence to corroborate his testimony.

## II

As I read the district court's decision, I see two fundamental—and overlapping—errors in the way that it dealt with the state post-conviction court's factual determination that Cannella had "credibl[y]" testified that he had an in-court

34

colloquy in which he advised Hayes about the merits and demerits of abandoning an insanity defense in favor of a straight not-guilty plea. First, although it recited § 2254(e)(1)'s standard, it seems clear to me that the court failed to accord the state court's credibility finding a presumption of correctness, let alone find it rebutted, as the text requires, by "clear and convincing evidence." Second, the district court mixed, matched, and conflated § 2254(e)(1) and § 2254(d)(2), such that it ended up concluding that what I'll call an "(e)(1) error" necessarily entailed a holding that the state court's "decision" was "based on" an "unreasonable determination of the facts" within the meaning of § 2254(d)(2).

I will address the district court's errors in turn.

## A

The first, to me, is straightforward—the district court purported to apply § 2254(e)(1) but gave it short shrift. As I understand it, subsection (e)(1) states a universal requirement, applicable to *all* federal habeas proceedings involving state prisoners, whether subject to § 2254(d)(1), § 2254(d)(2), or both:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Importantly, we've made clear that "[i]n the absence of clear and convincing evidence, we have no power on federal habeas review to revisit

the state court's credibility determinations." *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1259 (11th Cir. 2013). Here, then, the district court was required to presume that *all* of the state court's findings of fact—including its determination that Cannella was "credible" when he testified that he had the insanity-related colloquy with Hayes—were correct, and to accept them as true, absent clear and convincing evidence that they were false. *See id*. at 1258; *see also Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1272 (11th Cir. 2020) ("The credibility of a witness is a question of fact entitled to a presumption of correctness under AEDPA."). By my reading, the district court failed to do so.

To be sure, the district court recited § 2254(e)(1)'s clear-and-convincing standard. But I see no indication that it meaningfully applied that standard or, indeed, that it held Hayes to *any* burden to disprove Cannella's sworn testimony that he engaged in a colloquy about abandoning the insanity defense. A key question at the state post-conviction hearing was whether the colloquy occurred. Cannella testified that it did—referring to it at least three times in the course of a single exchange—and the state court expressly found his testimony to be "credible." Hayes didn't testify at the hearing, nor did he present any witnesses to rebut Cannella's account. As the case arrived on the district court's doorstep, then, there was *no* reason—let alone a "clear and convincing" reason—to doubt the state post-conviction court's factual determinations.

36

Nor did any such reason arise in the district court. As already explained, the district court got hung up on the fact that the state's lawyer couldn't seem to marshal any proof to corroborate Cannella's testimony, chastising her for failing to produce a written transcript of the colloquy. But it was *Hayes's* burden to *disprove* Cannella's account, not the state's burden to (further) prove it. And as a matter of simple logic, the absence of conclusive proof in the record that a witness's sworn testimony was true is *not* the same thing as presence of proof that his testimony was false—let alone proof that would rise to the level of "clear and convincing evidence."

And the district court's unstated assumption—that before a federal habeas court can accept a state court's factual finding based on a credibility determination, it must be able to point to corroborative documentary proof—is not just illogical, but also unlawful. Our decision in *Nejad v. Attorney General, State of Georgia*, 830 F.3d 1280 (11th Cir. 2016), is very nearly on point. There, a § 2254 petitioner brought an ineffective-assistance claim based on his lawyer's alleged failure to advise him of his right to testify in his own defense. The state argued that the petitioner couldn't have been prejudiced by any such failure because the trial judge had advised him of his right to testify. As here, though, the transcript didn't reflect any on-the-record colloquy. *Id*. at 1284–85. Even so, as here, after an evidentiary hearing, the state post-conviction court found, on the basis of the prosecutor's sworn testimony recounting the events in question, that the trial judge had indeed advised

37

the petitioner of his right to testify.  *Id*. at 1285–86.  And as here, on federal habeas review, the district court rejected the state court's witness-credibility determinations and granted relief.  *Id*. at 1288.

We reversed, emphasizing that the state court could reasonably have concluded that "the trial transcript did not reflect everything that was said during the trial."  *Id*. at 1291.  We held, then, that the absence of documentary proof to corroborate a witness's sworn testimony did not constitute the clear and convincing evidence necessary to reject a state court's factual determination.  Reiterating what we had said earlier, we emphasized that "[f]ederal habeas courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  *Id*. at 1291–92 (quoting *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011)).

It seems clear to me that the district court here failed to accord the state court's credibility determination the deference it was due under § 2254(e)(1).  Far from requiring Hayes to come up with "clear and convincing evidence" that Cannella lied about the insanity-related colloquy, the district court faulted the state for failing to come up with evidence to corroborate Cannella's testimony.  That was error.

**B**

Separately, I worry that the district court's order reflects a misunderstanding of §§ 2254(d)(2)'s and (e)(1)'s respective roles.  Even if the district court was right

38

about § 2254(e)(1)—that is, even if it correctly concluded that Hayes had successfully rebutted the state court's credibility finding and "clear[ly] and convincing[ly]" proved that Cannella never had the in-court colloquy—that would not ipso facto necessitate a conclusion that Hayes had met § 2254(d)(2)'s separate requirement that the state court's "decision" be "based on" an "unreasonable determination of the facts."

As I read its order, the district court conflated §§ 2254(d)(2) and (e)(1) and generally failed to appreciate those subsections' different functions. Evidence of that conflation—and confusion—pervades the court's written order. For instance, the court opened its analysis with what it called an "[a]pplication of Section 2254(d)(2)," in which it concluded that "[t]he state post-conviction court unreasonably determined the facts." It then proceeded to cite and paraphrase § 2254(e)(1)'s clear-and-convincing standard, only to cite a § 2254(d)(2) case, *Brumfield v. Cain*, 576 U.S. 305 (2015), for the standard by which a federal court should determine whether a state court's factual determinations are "unreasonable"—a term that subsection (d)(2) uses but subsection (e)(1) does not. So too, toward the end of its analysis, the district court stated that "[a]lthough Section 2254(d)(2) requires a federal district court to accord the state trial court 'substantial deference,' 'deference does not imply abandonment or abdication of judicial review,' and 'does not by definition preclude relief'"—and went on to conclude, in

39

terms that seem more suited to subsection (e)(1) than subsection (d)(2), that "[t]he state post-conviction court's factual determination—that [Cannella's] testimony was credible—is not supported by the record." Finally, in summarizing its reasons for declining to accord the state court's decision AEDPA deference, the district court stated that Hayes had "establishe[d] by clear and convincing evidence"—seemingly a reference to § 2254(e)(1)—"that the state court's factual findings that [Cannella's] testimony was credible and that his withdrawal of the insanity defense was a tactical decision are *unreasonable*"—a term, again, that subsection (e)(1) doesn't even use— "because neither finding is supported by the record."

The district court's confusion, it seems to me, led it to conclude that (what it took to be) an (e)(1)-qualifying error—that is, a factual determination that has been "clear[ly] and convincing[ly]" proven false—necessarily and ineluctably leads to a holding that the state-court "decision" in which that determination appears is itself "based on" an "unreasonable determination of the facts" within the meaning of § 2254(d)(2). To be sure, that may sometimes be the case. But not always—it's just more involved than that. In the balance of the opinion, I hope to explain why and, in the process, to try to unpack what I take to be the proper relationship between §§ 2254(d)(2) and (e)(1).

Before doing so, though, I should first acknowledge that the district court's confusion is both understandable and forgivable. Questions about the interplay

between subsections (d)(2) and (e)(1) have been with us since AEDPA's enactment. *See* Note, *Rewriting the Great Writ: Standards of Review for Habeas Corpus Under the New 28 U.S.C. § 2254*, 110 Harv. L. Rev. 1868, 1874–76 (1997). And to this point, anyway, the Supreme Court hasn't provided any real guidance about how the two fit together.

There have been hints, to be sure. In *Miller-El v. Cockrell*, for instance, the Court emphasized that subsections (d)(2) and (e)(1) are "independent requirements." 537 U.S. 322, 341 (2003). It therefore faulted the Fifth Circuit for merging them to require something that AEDPA's text doesn't—namely, that a habeas petitioner "prove that a decision is objectively unreasonable by clear and convincing evidence." *Id.* In rejecting that hybridized standard, the Court gestured toward the two provisions' respective functions. "The clear and convincing evidence standard is found in § 2254(e)(1)," the Court observed, "but that subsection pertains only to state-court determinations of factual issues, rather than decisions." *Id.* Subsection (d)(2), it continued, refers to "decisions" and "contains the unreasonable requirement." *Id.* at 342. And, importantly, the Court clarified that each subsection has its own role:

> Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).

41

*Id.* at 340.

*Miller-El* was a start, but in the years since it was decided, precisely how subsections (d)(2) and (e)(1) relate to one another has remained an open question. *See, e.g.*, *Rice v. Collins*, 546 U.S. 333, 339 (2006). During that time, the Court has twice granted certiorari specifically to address that issue, only to bypass it. *See Wood v. Allen*, 558 U.S. 290, 300 (2010); *Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("We have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1), and we need not do so here.").

In the absence of any controlling decision, the circuits remain split—or, like the district court here, confused—over the exact relationship between subsections (d)(2) and (e)(1). *See Fields v. Thaler*, 588 F.3d 270, 279–80 (5th Cir. 2009) (collecting cases); *Lucien v. Spencer*, 871 F.3d 117, 127 n.4 (1st Cir. 2017); Bryan R. Means, *Federal Habeas Manual* § 3:82 (2021) (describing the variety of approaches taken by circuit courts). Most courts that have addressed the subject seem to have held that § 2254(e)(1) requires a federal court to presume that a state court's factual determinations are correct even in the context of a § 2254(d)(2) challenge—and, thus, that the two subsections present separate barriers to relief. *See Fields*, 588 F.3d at 278–80. The First Circuit has so far managed to avoid the issue. *See, e.g.*, *Smith v. Dickhaut*, 836 F.3d 97, 101 (1st Cir. 2016) ("[E]ven if we were to assess the state court's factual determinations under the more petitioner-friendly

42

standard set out in § 2254(d)(2), rather than the more deferential standard in 2254(e)(1), [the petitioner] would still not be entitled to the relief he seeks."). For its part, the Ninth Circuit has (alone) held that § 2254(e)(1)'s presumption applies only when a habeas petitioner presents new evidence in federal court. *See Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984 (9th Cir. 2014).

And to be fair, we've been a little inconsistent ourselves. In some cases, we've just bracketed the question of how subsections (d)(2) and (e)(1) interact. *See, e.g., Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739, 747 (11th Cir. 2011) ("We have not yet had an occasion to completely define the respective purviews of (d)(2) and (e)(1), and this case presents no such opportunity."). In others, we've given weight to § 2254(e)(1)'s presumption without definitively determining how it relates to § 2254(d)(2). *See, e.g., Newland v. Hall*, 527 F.3d 1162, 1183–84 (11th Cir. 2008); *see also Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1310 (11th Cir. 2012) ("[T]he Florida Supreme Court's finding that Randall's testimony was credible was not rebutted by clear and convincing evidence, and the district court was plainly required to presume the correctness of that factual finding under AEDPA. 28 U.S.C. § 2254(e)(1).").

To my mind, careful attention to § 2254's text shows that the two provisions play separate roles in federal habeas review. Start with § 2254(e)(1). As I've said,

subsection (e)(1) articulates a universal requirement:  In every habeas proceeding initiated by an individual in state custody, any "determination of a factual issue" by the state court "shall be presumed correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Section 2254(d) is different—it explains how federal courts should review state-court "decision[s]" and generally prohibits a federal court from granting habeas relief unless a state court's "decision" itself was "unreasonable," either legally or factually.  As particularly relevant for our purposes, § 2254(d)(2) bars relief absent a showing that the state court's "decision" was "based on" an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id*. § 2254(d)(2).  Importantly here, because a "decision" might comprise many "determination[s]"—some factual, some legal—§ 2254(d) prevents federal courts from granting relief because of errors that don't affect the ultimate reasonableness of the state court's decision.

Clearly, subsections (d)(2) and (e)(1) share some of the same space, and there is some logical relationship between them.  But it seems to me that the district court misunderstood that relationship.  If the petitioner can't discharge his burden under § 2254(e)(1) by proving by clear and convincing evidence that *any* of the state court's individual factual "determinations" was erroneous, then it follows that he also can't demonstrate that the state court's "decision" was "based on" an "unreasonable

44

determination of facts" within the meaning of § 2254(d)(2). The converse, though, is not necessarily true. Even if a petitioner can prove—even clearly and convincingly—that a state court's factual determination (or determinations) was (or were) erroneous, he may yet be unable to make the required showing under § 2254(d)(2)—namely, that the state court's factual error (or errors) resulted in a "decision" that was "based on" an "unreasonable determination of the facts." That's because a factual error, given its bigness or smallness, might or might not rise to the level that it renders the state court's ultimate "determination of the facts" unreasonable, or because, despite the error, the state court's "decision" might or might not have been "based on" it.[4] That is, a state court's "decision" can be reasonable even if some of its individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an "unreasonable determination of the facts" and isn't "based on" any such determination. *See Valdez v. Cockrell*,

---

[4] It seems to me that the most sensible interpretation of "based on"—in § 2254(d)(2), as elsewhere—is that the "unreasonable determination of the facts" must have been a but-for cause of the state court's "decision." *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63 (2007) ("In common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition."); *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 (2020) (similar). Although neither the Supreme Court nor this Court has definitively resolved the issue, two other circuits appear to have embraced the but-for interpretation. *See, e.g.*, *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011) ("[Petitioner's] claim under § 2254(d)(2) ultimately fails because he cannot show that the decision— i.e., the overall *Strickland* determination of the court—was based on— i.e., rests upon—an unreasonable determination of the facts." (internal quotation marks and citations omitted)); *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) ("[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination.").

274 F.3d 941, 951 (5th Cir. 2001) ("[I]t is possible that, while the state court erred with respect to one factual finding under § 2254(e)(1), its determination of facts resulting in its decision in the case was reasonable under § 2254(d)(2)."); *see also Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007) (similar).[5]

The point: A petitioner's failure to carry his burden under subsection (e)(1) necessarily means that he can't carry his burden under subsection (d)(2), but a petitioner's success in carrying his burden under (e)(1) does *not* necessarily mean that he can carry his burden under (d)(2). Here, Hayes couldn't meet § 2254(d)(2)'s bar without first showing—as a threshold matter and by the clear and convincing evidence required by § 2254(e)(1)—that the state court had made at least one erroneous factual finding. For reasons I've explained, he can't do even that. But even assuming, as the district court seemed to conclude, that Hayes had clearly and convincingly shown that Cannella's testimony about the colloquy was false for (e)(1) purposes, the court was nonetheless required to explain how and why the state court's "decision" was "based on" an "unreasonable determination of the facts" within the meaning of (d)(2).

---

[5] None of this is to say that federal courts must, in every case, expressly address § 2254(e)(1) before proceeding to § 2254(d)(2). For instance, there may well be cases in which, even assuming some (e)(1)-qualifying error, a petitioner can't overcome subsection (d)(2) for reasons explained in text. As the Supreme Court has shown, a court can resolve fact-based challenges to a state court's decision without resolving the uncertainty about how these two provisions interact. *See, e.g.*, *Burt v. Titlow*, 571 U.S. 12, 18 (2013).

46

The district court didn't do that. Nor could it, as there was nothing remotely "unreasonable" about the state court's overall "determination of the facts." Based on the evidence before it, the state court reasonably found that Cannella made a strategic decision to abandon the not-guilty-by-reason-of-insanity defense because (1) experts had already deemed Hayes competent to stand trial, (2) Hayes had covered up his crime, rendering it unlikely that Florida law would support an insanity defense, and (3) Hayes didn't want to proceed with that defense. And because, even without Cannella's testimony, there was ample evidence supporting the state court's determination that Cannella's abandonment of a losing defense before trial was a reasonable strategic decision under *Strickland*, I simply can't say that the state court's adjudication of Hayes's ineffective-assistance claim resulted in a "decision" that was "based on" an "unreasonable determination of the facts."

## III

It seems to me that a proper review of Hayes's petition should have proceeded essentially as follows: All of the state court's factual findings should have been presumed correct under § 2254(e)(1), including the court's determination that Cannella credibly testified that he had the insanity-related colloquy with Hayes. Hayes failed to show by clear and convincing evidence that the state court's factual findings were erroneous and that Cannella's testimony wasn't credible. And it was reasonable under § 2254(d)(2)—indeed, doubly so in light of Hayes's failure to

47

clearly and convincingly disprove even a single state-court finding—for the state court to conclude that Cannella made a tactical decision to abandon the insanity defense during the trial, because he concluded that the insanity defense would fail and that another defense might succeed.  And finally, to round out the discussion, § 2254(d)(1) wouldn't warrant relief because the state court correctly (and in any event reasonably) applied *Strickland* to Hayes's case and held that Cannella's strategic decision to abandon a losing defense was reasonable.  *See Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." (quotation marks omitted)).  Because the state court adjudication of Hayes's claim didn't result in a decision that was either legally or factually unreasonable, the federal court had no power to bypass § 2254(d)'s bars and grant the writ.

* * *

The Court is quite right to reverse, and I join its opinion doing so.  I've written separately because I fear that the district court's order is wrong in ways that the Court doesn't address, in that it evinces a fairly serious (if understandable) misconception about how 28 U.S.C. §§ 2254(d)(2) and 2254(e)(1) operate and interrelate, and because I think that misconception merits correction.