[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11443

_____

D.C. Docket No. 1:16-cv-00454-WS-C

CHARLES GREGORY CLARK,

Petitioner-Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(February 25, 2021)

Before WILSON, JORDAN, and BRANCH, Circuit Judges.

WILSON, Circuit Judge:

Charles Gregory Clark was convicted of murder committed during a robbery in the first degree. *See* Ala. Code § 13A-5-40(a)(2). A jury recommended a death sentence, 11 to 1, and the trial court accepted that recommendation. After his direct appeal and state habeas review, Clark filed a federal habeas petition, alleging, in part, ineffective assistance of counsel. The district court denied the petition, holding that the ineffective assistance claim was procedurally defaulted. This is his appeal.

Clark agrees that the procedural-default doctrine would typically bar his ineffective-assistance claim. But he argues that his case falls within the procedural-default exception identified in *Martinez v. Ryan*, 566 U.S. 1 (2012).[1] We disagree. Even if *Martinez* could excuse Clark's procedural default, we affirm because Clark has failed to show actual prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), and therefore has not presented a "substantial claim" that his trial counsel rendered ineffective assistance, *see Martinez*, 566 U.S. at 17.

## BACKGROUND

Clark brutally murdered William Fuller Ewing—a man he had known for ten years—at Ewing's gas station and convenience store in Gulf Shores, Alabama.

---

[1] Clark abandoned his *Ring v. Arizona*, 536 U.S. 584 (2002) challenge to Alabama's sentencing scheme after the United States Supreme Court's decision in *McKinney v. Arizona*, 589 U.S. ___, 140 S. Ct. 702 (2020).

When police arrested him, Clark had Ewing's blood on his hands, clothes, and neck, with no apparent wounds. Almost $400—stolen from Ewing's convenience store—was found in the car Clark was driving. Hair found at the crime scene seemingly matched Clark's hair; shoeprints found at the crime scene matched the soles of his shoes. And after waiving his *Miranda*[2] rights, Clark admitted to the murder and showed the authorities where other incriminating evidence could be found. In short, the evidence of Clark's guilt was overwhelming. Not surprisingly, he was unanimously convicted. And at the penalty phase, the jury voted 11 to 1 for the death penalty. The trial court agreed and sentenced Clark to death.

Clark appealed his conviction and sentence to the Alabama Court of Criminal Appeals; both were affirmed. Then the Alabama Supreme Court and Supreme Court of the United States denied his petitions for certiorari. In 2005, Clark filed for postconviction relief in the Alabama state courts. The Baldwin County Circuit court held an evidentiary hearing and denied relief. Again, the Alabama Court of Criminal Appeals affirmed, and the Alabama Supreme Court denied certiorari.

Clark then filed a habeas petition in the Southern District of Alabama. Before the district court, Clark sought to raise a procedurally defaulted ineffective-

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

assistance-of-counsel claim.[3]  He presented evidence that at least two jurors saw him shackled during trial and claimed that, since he was restrained without an adequate and on-the-record justification, his trial counsel should have objected. During his initial state postconviction review, Clark's counsel introduced this ineffective-assistance claim but orally abandoned the claim before the evidentiary hearing.[4]  Clark failed to reintroduce this claim in later state court proceedings.

The district court rejected Clark's ineffective-assistance claim as procedurally defaulted because Clark failed to raise it before the Alabama Court of Criminal Appeals or the Alabama Supreme Court.  Though Clark argued his claim fell within the narrow exception first discussed in *Martinez*, the district court held, in part, that *Martinez* could not save Clark from a procedural default at the appellate stage of state postconviction proceedings, because those appeals are not the prisoner's first opportunity to raise a claim for ineffective assistance of trial counsel.

---

[3] When a state prisoner fails to present a claim to the state court in a timely and proper manner, and the state court refuses to address the merits of that claim based on state law, that claim is procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991).  Federal courts are generally precluded from hearing the merits of procedurally defaulted claims except in rare cases.  *See id.* at 750.

[4] Although the record does not disclose why state postconviction counsel withdrew this claim, Clark asserts it was because his counsel did not interview the jurors and thus had no evidence that any juror saw the restraints.

## DISCUSSION

We review the district court's denial of a 28 U.S.C. § 2254 petition de novo. *Ward v. Hall,* 592 F.3d 1144, 1155 (11th Cir. 2010). But "we generally review the District Court's findings of fact for clear error." *Madison v. Comm'r, Ala. Dep't of Corr.,* 761 F.3d 1240, 1245 (11th Cir. 2014). Our review of Clark's habeas petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Kimbrough v. Sec'y, DOC*, 565 F.3d 796, 798 (11th Cir. 2009) (per curiam).

### A.

Before bringing a habeas action in federal court, a petitioner must exhaust all state-court remedies available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)–(c); *see also Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). This means that "[s]tate prisoners must give the state courts *one full opportunity* to resolve any constitutional issues by invoking *one complete round* of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358–59 (11th Cir. 2003) (emphases added) (internal quotation mark omitted).

When the petitioner fails to exhaust state-court remedies "and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law

procedural default . . . the exhaustion requirement and procedural default principles combine to mandate dismissal," and federal habeas relief is barred absent an applicable exception. *See Bailey v. Nagle*, 172 F.3d 1299, 1303, 1306 (11th Cir. 1999) (per curiam). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (internal quotation mark omitted).

Here, the parties agree that Clark's ineffective-assistance-of-counsel claim is procedurally defaulted. Clark "failed to give the state courts one full opportunity to resolve [his] claim by invoking one complete round of Alabama's well established appellate review process." *See id.* at 898. And if Clark were to now attempt to raise this claim in the Alabama courts, they would almost assuredly be rejected on Alabama's "firmly established and consistently applied procedural grounds." *See id.* at 899. If he brought his claim as a new Rule 32 petition, it either would be barred by the statute of limitations, *see* Ala. R. Crim. P. 32.2(c), or dismissed as a second or successive petition, *see* Ala. R. Crim. P. 32.2(b).

But procedural default can be overcome. Generally, to excuse default, a petitioner must either show cause for the failure to properly present the claim and actual prejudice from the default, *Marek v. Singletary*, 62 F.3d 1295, 1301–02 (11th Cir. 1995), or show that the failure to consider the claim would lead to a

6

fundamental miscarriage of justice, *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). And, until fairly recently, "an attorney's ignorance or inadvertence in a postconviction proceeding [did] not qualify as cause to excuse a procedural default." *Martinez*, 566 U.S. at 9; *see also Coleman*, 501 U.S. at 757 (holding that when a petitioner "had no right to counsel to pursue his appeal in state habeas" and "attorney error . . . led to the default of [the petitioner's] claims in state court," error could not constitute cause to excuse procedural default).

Yet the Supreme Court has qualified this principle. In *Martinez*, the Supreme Court announced a narrow exception. 566 U.S. at 9. Now, a petitioner can establish cause for the procedural default of a claim of ineffective assistance of trial counsel where: (1) the petitioner has a "substantial claim" that his trial counsel rendered ineffective assistance; (2) the petitioner had no counsel or received ineffective assistance of counsel during the initial-review collateral proceeding; (3) "the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'"; and (4) state law required the petitioner to raise the ineffective-assistance-of-trial counsel claim in the initial collateral proceeding. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez*, 566 U.S. at 14–17).

Clark argues that *Martinez* excuses his procedural default because his postconviction counsel was ineffective. He says that his failure to raise his

7

ineffective-assistance claim on appeal from denial of postconviction relief—after abandoning the claim in his initial postconviction proceeding—is functionally the same as the failure in *Martinez*, where the petitioner failed to raise the claim at any level of his initial-state postconviction review. *Martinez*, 566 U.S. at 4–7. And he argues that his circumstances track the Court's concerns in *Martinez*.

But even assuming *Martinez* could excuse Clark's failure to raise his claim *on appeal* from an initial-review collateral proceeding,[5] *Martinez* is of no help because Clark has not presented a "substantial claim" that his trial counsel rendered ineffective assistance, *see id.* at 17.[6]

---

[5] There are reasons to think it doesn't. Namely, in *Martinez*, the Court stated that the exception is limited to ineffective assistance at the "initial-review collateral proceeding[]," i.e., the "collateral proceeding[] which provide[d] the *first* occasion to raise a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 8 (emphasis added). The Court even made clear that *Martinez*'s holding did "not concern attorney errors in . . . appeals from initial-review collateral proceedings." *Id.* at 16. But again, we do not decide this issue.

[6] We also assume, without deciding, that Clark is right that *Martinez* could also excuse his failure to properly exhaust his claim. Though the petitioners in *Martinez* and *Trevino* failed to raise their claims at any level of their initial-state postconviction review, their claims were presented to and rejected by state courts in a second round of review before federal courts considered the claims on the merits. *See Trevino*, 569 U.S. at 417–20; *Martinez*, 566 U.S. at 4–7.

The Commissioner argues that Clark must present his ineffective-assistance claim to the Alabama state courts to properly exhaust it, and that AEDPA and comity require that state courts review this matter first, no matter how futile. Clark says otherwise. Citing three of our sister circuits, he claims that *Martinez*'s exception is to both procedural default *and* exhaustion. *See, e.g.*, *Moore v. Stirling*, 952 F.3d 174, 181 (4th Cir. 2020) (holding that, after *Martinez*, "a 'narrow' exception exists for state prisoners to raise unexhausted federal claims"). He also argues that requiring him to present seemingly futile claims would be a needless exercise in "judicial ping-pong." *See Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1351 (11th Cir. 2004). Because Clark fails to make a substantial claim, we need not decided this issue either.

B.

"Neither *Martinez* nor *Trevino* elaborated on or applied [the substantial claim] standard," but we have applied "the already-developed standard for issuing a [certificate of appealability], which requires a substantial showing of the denial of a constitutional right." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269 (11th Cir. 2014) (internal quotation mark omitted). A substantial showing exists where a petitioner has shown that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Id.* at 1269–70; *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (holding that a petitioner must "show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (alteration accepted) (internal quotation marks omitted)). We make this determination after considering "the fact-pleading requirement for § 2254 petitions, and the standard from *Strickland*." *Hittson*, 759 F.3d at 1270.

The benchmark for judging a claim of ineffective assistance is whether counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To establish an ineffective-assistance claim, a petitioner must prove by "a preponderance of competent evidence" that (1) the

9

performance of his trial or appellate attorney was objectively unreasonable and (2) that such deficient performance prejudiced his defense. *Chandler v. United States*, 218 F.3d 1305, 1312–13 (11th Cir. 2000) (en banc). A court may address the steps in either order and need not address both when denying a claim. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

We begin (and end) with prejudice. To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the death-penalty context, "the question is whether there is a reasonable probability that, absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Stewart v. Sec'y, Dep't of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007) (ellipsis omitted) (internal quotation marks omitted).

Clark has presented evidence that, at trial, at least two jurors saw him physically restrained with a leg brace. He claims that since he was restrained without adequate and on-the-record justification by the district court, his trial counsel should have objected and that the failure to object constituted inadequate assistance. We have held that physical restraints upon a defendant "should be used as rarely as possible" as they tend to interfere with a criminal defendant's

10

constitutionally guaranteed rights. *See United States v. Durham*, 287 F.3d 1297, 1304–1305 (11th Cir. 2002); *see also Deck v. Missouri*, 544 U.S. 622, 629 (2005) (holding that the Constitution "prohibit[s] the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial").

Citing our decision in *Elledge v. Dugger*, 823 F.2d 1439, 1451 (11th Cir. 1987) (per curiam) (observing that shackles are "inherently prejudicial"), *withdrawn in part on denial of reh'g and reh'g en banc*, 833 F.2d 250 (11th Cir. 1987), and the Court's decision in *Deck*, Clark argues that prejudice is presumed here because at least two jurors saw the restraints. *See Deck*, 544 U.S. at 635 ("[W]here a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation.").

*Deck* does not apply here. "[W]hile *Deck* altered the burden of proof in a substantive shackling claim brought under the Due Process Clause, it did not affect the petitioner's burden to prove actual prejudice when raised in an ineffective assistance of counsel claim on collateral review." *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1321 (11th Cir. 2016); *see also Marquard v. Sec'y for Dep't*

11

*of Corr.*, 429 F.3d 1278, 1313 (11th Cir. 2005).[7]  So Clark cannot benefit from

*Deck*'s presumption.

    *Elledge* is also distinguishable.  The petitioner there did not pursue an

ineffective-assistance claim on collateral review, but instead raised Fifth and

Fourteenth Amendment issues.  *See Elledge*, 823 F.2d at 1442; *see also Whatley v.*

*Warden, Ga. Diagnostic & Classification Ctr.*, 927 F.3d 1150, 1184 n.57 (11th Cir.

2019).  *Elledge* thus stands for the unremarkable proposition that "shackling a

defendant without a justified state interest violates a criminal defendant's due

process rights under the Fourteenth Amendment" and that, "if certain conditions

are met, . . . courts—on direct appeal—should presume the defendant was

prejudiced by the unconstitutional shackling."  *Whatley*, 927 F.3d at 1184; *see also*

*Elledge*, 823 F.2d at 1450–52.  That proposition is of no benefit here.

C.

    With all this in mind, Clark must show a reasonable probability that—

without his being visibly shackled—the jury would not have convicted him or that

the jury would not have recommended the death penalty.  *See Jones*, 834 F.3d at

1321.  He must establish that his "[c]ounsel's errors [were] so serious as to deprive

---

[7] The Alabama Court of Criminal Appeals has reached the same conclusion.  *See Stanley v.*
*State*,     So. 3d     , No. CR-18-0397, 2020 WL 2820559, at *52 (Ala. Crim. App. May 29,
2020) (holding that *Deck* does not relieve a petitioner from proving *Strickland* prejudice in a
collateral-review ineffective-assistance-of-counsel claim).

[him] of a fair trial, a trial whose result is reliable." *See Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation mark omitted).

He's failed to meet this standard; the evidence presented at trial was overwhelming.[8]  The jury heard from Dr. Leroy Riddick, a medical examiner, that Ewing had suffered fifteen stab wounds (wounds deeper than their length) and seventeen cuts (wounds longer than their depth).  Ten of the stab wounds were to the front of Ewing's torso, including one into his heart, one to his right chest muscle, and one that struck the sixth rib (which is just below the level of the heart).  Three of the stab wounds were on Ewing's back, two of which struck bone.  Another wound, this time on his right hand, reached bone.  As for the seventeen cuts, they were all over Ewing's body, including on his face, neck, torso, abdomen, hands, and arms.  Dr. Riddick described the few cuts to Ewing's hands and arms as defensive wounds.

Dr. Riddick testified that the wounds were likely caused by a knife and that, given the amount of blood in each wound, Ewing was probably alive when each wound was inflicted.  He stated that the two stab wounds in Ewing's back would have taken "some degree of force" since they were deep and struck bone.  He also said that the stab wound that pierced Ewing's heart would have been fatal within

---

[8] We draw the facts mostly from Clark's direct appeal, *Clark v. State*, 896 So. 2d 584, 597–604, 626–628 (Ala. Crim. App. 2000), and his state habeas appeal, *Clark v. State*, 196 So. 3d 285, 291–299 (Ala. Crim. App. 2015).

minutes. Dr. Riddick testified that the few defensive wounds suggested that Ewing and his assailant were within two feet and struggling at the time of the stabbing.

Clark's arresting officers also testified. They told the jury that Clark had a great deal of blood on his hands, neck, and clothes, and with no apparent wounds. One officer described a bald spot near the crown of Clark's head where it appeared hair had been pulled out. The officers explained how when they searched the car Clark was driving, they found almost $400 in bills, a ski mask, and that morning's paper.

After his arrest, Clark waived his *Miranda* rights and provided a tape-recorded statement, which the jury heard. The jury heard Clark admit to stabbing Ewing several times with his hunting knife. They heard his claim that Ewing had attacked him, hit him, and had him by the hair. And they heard how, after Clark had left the store and started walking to his car—and as Ewing was struggling for his life—Clark returned to the store to steal money so he could buy crack cocaine.

The jury saw physical evidence of Clark's guilt. Clark led authorities to where he discarded certain items, including a bank bag that still contained Ewing's checkbook. Two knives were found in that area, either of which, Dr. Riddick testified, could have been the weapon. An officer testified that a hair clump found at the crime scene appeared to match Clark's hair. There was also testimony that a crime-scene shoeprint matched the soles of the boots Clark was wearing when

14

arrested.  And a forensic scientist testified that the blood found on Clark's right hand, neck, and clothing matched Ewing's blood.

Finally, the jury heard from Ewing's family.  They learned that, almost 30 years before his death, Ewing had been in an accident and had suffered physical and mental injuries.  Because of the accident, Ewing was unable to work a "regular job" and received his family's help to open the store.  The jury heard Ewing's family describe their irreplaceable loss.

Given the strong evidence of his guilt, there is no reasonable probability that the jury seeing Clark in shackles affected his conviction.  If they were seen, "the shackles were trivial in light of evidence before the jury."  *See Whatley*, 927 F.3d at 1187.

Nor is there any reasonable probability that seeing Clark in shackles affected the jury's decision to recommend the death penalty.  Given the powerful evidence we've recounted, the jury could have found, like the trial judge did, at least two aggravating factors: (1) the murder "was committed while [Clark] was engaged [in] . . .  or [in] flight after committing. . . [a] robbery," *see* Ala. Code § 13A-5-49(4), and (2) the murder was "was especially heinous, atrocious, or cruel compared to other capital offenses," *see id.* § 13A-5-49(8).

Of course, the jury had to weigh the aggravating circumstances against any mitigating circumstances.  *See* Ala. Code § 13A-5-46(e)(3).  Clark offered some

15

mitigating evidence, but the mitigating did not outweigh the aggravating.  Clark

presented evidence (rebutted by the State) that he was a model inmate.  The jury

heard that Clark was a good father (also rebutted by the State).  And, like he did at

trial, Clark claimed that he was under the influence at the time of the murder and

therefore unable to appreciate the criminality of his conduct (again, rebutted by the

State).  *See* Ala. Code § 13A-5-51(6).  Shackles or not, all of that pales in

comparison to this: Clark violently killed a man he had known for ten years, a man

who lived with physical and mental handicaps, a man who suffered a painful and

horrifying death.  "[O]ur confidence in the reliability of the guilty verdict and in

the jury's recommendation of death is not undermined."  *Jones*, 834 F.3d at 1323.

*        *        *

Because Clark did not present a substantial claim that his trial counsel

provided ineffective assistance, the judgment of the district court is **AFFIRMED.**

16