[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 21-14001

Non-Argument Calendar

————————————————

BERNARD HUGHLON,

                                        Petitioner-Appellant,

versus

STATE OF FLORIDA,
FLORIDA ATTORNEY GENERAL,

                                        Respondents-Appellees.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cv-00619-MMH-JBT

———————————

Before ROSENBAUM, JILL PRYOR, and LAGOA, Circuit Judges.

PER CURIAM:

Bernard Hughlon, a Florida prisoner proceeding *pro se*, challenges the district court's denial of his 28 U.S.C. § 2254 petition. We granted a certificate of appealability ("COA") on one issue: whether the district court erred in rejecting Hughlon's claim that his trial counsel performed ineffectively by failing to move to strike a juror that saw him in his jail uniform, and restraints before trial. For the following reasons, we affirm.

## I.

Hughlon was charged in Duval County, Florida with committing escape from the Duval County pretrial detention facility, in violation of Florida Statute § 944.40. At trial, Richard Futch, a detective with the Jacksonville Sheriff's Office, testified that he was conducting an interview of Hughlon at a separate building regarding a different matter. After the interview, Futch arrested Hughlon, secured him in handcuffs behind his back, and walked him next door to the pretrial detention facility where inmates are housed. A stipulation that "[t]he defendant hereby acknowledges that he was under arrest and in lawful custody" was read to the jury.

Futch testified that he and Hughlon entered the sally port of the jail, which he described as a large, six or eight car garage with

aluminum roll up doors at the entrances and exits. Hughlon was handcuffed behind his back and was in line with other inmates while Futch was with other officers waiting to sign his paperwork. One of the two aluminum doors to the sally port was open. Through his peripheral vision, Futch noticed that Hughlon's arms had come around to his front and saw him run out of the open door. Futch yelled to close the door and at Hughlon to stop. But the door did not close quickly enough, and Hughlon had a head start as Futch chased after him. Futch explained that Hughlon had one handcuff on but had gotten his other hand out of the cuffs.

Futch further testified that Detective Henson, who was also inside the sally port, assisted Futch in chasing after Hughlon. As they were running after Hughlon, Futch ordered him to stop, but Hughlon did not. Henson ultimately tased Hughlon, and Futch took him back into custody and walked him back to the sally port where he was booked into jail without further incident.

Henson also testified at trial that he was in the sally port booking suspects into the jail when Futch walked a suspect over for booking. He described the sally port as the area where paperwork is done in the booking process. While waiting, he heard Futch yell to shut the gate because Hughlon was running. Henson started running after Hughlon, warning that Hughlon would be tased if he did not stop. Hughlon ran approximately 100 yards before Henson "tased" him from about 6 feet.

On September 21, 2010, the jury returned a verdict of guilty, as charged, against Hughlon. At a post-trial hearing, Hughlon

raised an issue regarding the performance of his trial counsel to the trial court, stating that he filed a motion under *Nelson v. State, see* 274 So. 2d 256 (Fla. Dist. Ct. App. 1973) (prescribing the procedure for addressing a defendant's request to discharge appointed counsel due to counsel's alleged ineffective assistance), because, when he "was being escorted by the officers . . . to get ready for trial, the juror was sitting out there in the hallway, talking to [the prosecutor]," and the juror "stayed." Hughlon stated that he did not "feel like that was a fair trial" and had told his counsel. The state trial court reviewed the motion and asked trial counsel if Hughlon had raised the issue. Counsel responded by stating that he had done so. But counsel did not see how that would be prejudicial, as counsel "had trials with handcuffs and shackles, and [the defendants] have been found not guilty." As to the issue of the prosecutor talking to the juror, counsel told the court that this was the first time she heard about it. The court then found that counsel had "provided effective counsel to date" and later sentenced him to 30 years' imprisonment.

On direct appeal to the state appellate court, Hughlon argued that the trial court erred in determining that his counsel had been effective, given the fact that she failed to bring to the trial court's attention the incident involving the juror seeing him in his prison outfit and restraints prior to trial. The First District Court of Appeal *per curiam* affirmed without opinion.

Hughlon subsequently filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief in state court, in

which he argued that his trial counsel rendered ineffective assistance in failing to alert the court that, prior to trial, a juror had seen him in handcuffs and restraints. The post-conviction court summarily denied his claim as procedurally barred upon finding that it had been addressed during the sentencing hearing and found to lack merit. The post-conviction court further determined that the issue was also considered on direct appeal, where the state appellate court "implicitly found it to be without merit." Hughlon appealed the order denying his Rule 3.850 motion, and the First District Court of Appeal again *per curiam* affirmed without opinion.

Hughlon then filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 before the district court. Of relevance here, Hughlon alleged in his petition that his trial counsel performed ineffectively by failing to object to, or move to strike, a juror that talked to the prosecutor and saw him in his jail uniform and restraints before trial. Hughlon asserted that when he was being escorted to the courtroom on the day of trial, he witnessed the prosecutor and a member of the jury having a conversation, and the juror saw him while he was wearing a "jailhouse uniform, handcuffs, and shackles." He claimed his exposure to the juror was of "great length," and the uniform and restraints clearly identified him as an inmate and unnecessarily marked him as a "dangerous, violent, and incarcerated person." According to Hughlon, his appearance suggested his guilt had been predetermined, which violated his rights to a fair trial, due process, and an impartial jury. When Hughlon raised this issue with his trial counsel, counsel

disregarded the issue as "no big deal."  Hughlon argued that this was ineffective assistance of counsel that prejudiced him because the juror started the trial under the impression that he was a "dangerous, untrustworthy, and [] violent man who[] was obviously guilty" and that there was a reasonable probability that the outcome of the proceeding would have been different but for counsel's error in failing to advocate for removal of the juror.

The district court dismissed Hughlon's petition with prejudice in its entirety.  The district court noted that the post-conviction court summarized that the claim was found to be without merit at sentencing, was implicitly found to be without merit on appeal, and was procedurally barred in the Rule 3.850 in proceeding.  To the extent that the First District Court of Appeal decided the claim on the merits, the district court applied the deferential standard for federal court review of state court adjudications and determined that the state court's adjudication of this claim was not contrary to clearly established law or an unreasonable application of clearly established law and was not based on an unreasonable determination of the fact in light of the evidence presented.  The district court specifically concluded that there was "no reasonable probability a single juror's brief viewing of Hughlon handcuffed outside of the courtroom or the prosecutor's alleged conversation with a juror changed the outcome of the trial."  The district court cited the testimony presented by Futch and Henson, explained that identity was not an issue at trial given the unrebutted testimony, and determined that the state presented substantial evidence of

Hughlon's guilt.  Thus, the district court determined that Hughlon failed to demonstrate prejudice and denied relief as to that claim. The district court denied relief on Hughlon's remaining claims and denied a COA.

We granted a certificate of appealability ("COA") on one issue: whether the district court erred in rejecting Hughlon's claim that his trial counsel performed ineffectively by failing to move to strike a juror that saw him in his jail uniform, and restraints before trial.

## II.

We review a district court's denial of a § 2254 petition *de novo*. *Bester v. Warden*, 836 F.3d 1331, 1336 (11th Cir. 2016).  We liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2254.  *Dupree v. Warden*, 715 F.3d 1295, 1299 (11th Cir. 2013).  The district court's determination that the state court decision was reasonable is reviewed *de novo*.  *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1259 (11th Cir. 2005).

In the context of an unsuccessful § 2254 petition, the scope of our review is limited to the issues specified in the COA.  *Hodges v. Att'y Gen., State of Fla.*, 506 F.3d 1337, 1340 (11th Cir. 2007).  We may *sua sponte* expand a COA on "exceptional occasions," but an appellant granted a COA on one issue cannot simply brief other issues as she desires in an attempt to force both us and her opponent to address them.  *Dell v. United States*, 710 F.3d 1267, 1272 (11th Cir. 2013).

### III.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that, after a state court has adjudicated a claim on the merits, a federal court may grant habeas relief only if the state court's decision was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented to the state court.  28 U.S.C. § 2254(d)(1)–(2).  The AEDPA imposes a "'highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted) (first quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); then quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). In applying § 2254(d) deference, federal courts should not "take a magnifying glass" to the state's decision and analyze it line-by-line. *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1350 (11th Cir. 2019).

"[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Where the state court's decision is "unaccompanied by an explanation," as it is in this case, the petitioner must show "there was no reasonable basis for the state court to deny relief."  *Id.*

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI. To establish ineffective assistance of counsel, a petitioner must show that (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to establish either prong is fatal and makes it unnecessary to consider the other. *Id.* at 697. Deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* It is presumed that a petitioner's counsel acted competently, and the petitioner must prove that his attorney's representation was unreasonable under prevailing professional norms. *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc). To make such a showing, a defendant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *United States v. Freixas*, 332 F.3d 1314, 1319–20 (11th Cir. 2003) (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)). Prejudice occurs when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

When analyzing a claim of ineffective assistance under § 2254(d), our review is "doubly" deferential to counsel's performance. *See Harrington*, 562 U.S. at 105. Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that

counsel satisfied *Strickland*'s deferential standard." *Id.* When applying § 2254(d) deference to the prejudice prong of the *Strickland* standard, the question is "whether every fairminded jurist would conclude that prejudice has been established." *Meders*, 911 F.3d at 1351. We have stated that the combination of *Strickland* and § 2254(d) is "doubly difficult" for petitioners to overcome, and it will therefore be a "rare case" in which an ineffective-assistance claim denied on the merits in state court is found to merit relief in a federal habeas proceeding. *Gissander v. Seabolt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (quoting *Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1268 (11th Cir. 2012)).

In *Clark v. Commissioner, Alabama Department of Corrections*, 988 F.3d 1326 (11th Cir. 2021), *cert. denied sub. nom*, *Clark v. Hamm*, 142 S. Ct. 1134 (2022), we held that a petitioner could not raise a substantial claim of ineffective assistance of trial counsel to overcome a procedural default because he was not prejudiced when two jurors saw him in shackles at trial. *Id.* at 1332–33. There, the petitioner claimed that his trial counsel provided ineffective assistance because they did not object to him being restrained at trial because two jurors saw him shackled and he was restrained without an adequate and on-the-record justification. *Id.* at 1329, 1331. We noted that physical restraints on a defendant "should be used as rarely as possible" because they tend to interfere with a defendant's constitutional rights. *Id.* at 1331–32 (quoting *United States v. Durham*, 287 F.3d 1297, 1304–05 (11th Cir. 2002)). But we rejected the petitioner's arguments that our caselaw stating that shackles

are inherently prejudicial applied and concluded that our precedent did not affect a petitioner's burden to prove actual prejudice when raised in an ineffective-assistance-of-counsel claim on collateral review. *Id.* at 1332. We concluded that the petitioner was required to show a reasonable probability that, without his being visibly shackled, the jury would not have convicted him and that he had failed to meet that standard because the evidence against him was "overwhelming." *Id.* at 1332–33.

Applying § 2254(d) deference to the prejudice prong of the *Strickland* standard, Hughlon had to show that every fair-minded jurist would conclude that prejudice has been established. *Meders*, 911 F.3d at 1351. As in *Clark*, Hughlon could not meet that burden because the evidence against him at trial was overwhelming. Hughlon stipulated at trial that he was "under arrest and in lawful custody" when Futch was escorting him to the pretrial detention facility. Futch and Henson provided undisputed testimony that they saw Hughlon slip out of his handcuffs and run out of the sally port door for roughly 100 yards until he was tased. Between the stipulation and the detectives' testimony, it was clear that Hughlon violated Florida's escape statute. *See* Fla. Stat. 944.40 (2010). Accordingly, in light of the strong evidence against Hughlon, like in *Clark*, there was no reasonable probability that a juror seeing him in restraints impacted the outcome of his trial. *See Clark*, 988 F.3d at 1333.

Since Hughlon is unable to demonstrate that he was prejudiced by his counsel's alleged deficient performance, his claim fails,

and we need not address whether his counsel's performance was deficient. *See Strickland*, 466 U.S. at 697. Because Hughlon is thus unable to overcome the difficult standard of double deference under § 2254(d) that applies to *Strickland* claims, *see Harrington*, 562 U.S. at 105, we affirm. Finally, we do not address Hughlon's alternative argument concerning his trial counsel's alleged ineffectiveness in failing to investigate a plea offer since this argument is outside the scope of the narrow COA that we granted.

**AFFIRMED.**