[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13951

_____

JASON JAMES NEIHEISEL,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cv-00313-BJD-JBT

_____

Before ROSENBAUM, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Petitioner-Appellant James Neiheisel appeals from the district court's denial of his collateral motion to vacate his sentence under 28 U.S.C. § 2255.  A jury convicted Neiheisel of distributing child pornography via a peer-to-peer file-sharing system.  In his § 2255 case, Neiheisel argued that his trial counsel provided ineffective assistance of counsel.  The district court rejected Neiheisel's claims.  For the reasons below, we affirm.

## I.    Background

### A. Factual Background and Criminal Proceedings

In late 2015 and early 2016, a detective in Florida's Columbia County Sheriff's Office identified a device at a specific internet protocol ("IP") address sharing child pornography using the BitTorrent file-sharing system.  The detective used a specialized law-enforcement software program called "Torrential Downpour," to search for, identify, and then download the child-pornography files.

On February 6, 2016, Torrential Downpour connected to a "target device" at that IP address and downloaded dozens of videos that were "child pornographic in nature."  Torrential Downpour did so again on February 7.  Comcast later confirmed that the IP address was registered to Neiheisel at a Jacksonville address.

The target device shared the files using the software "Vuze," version 5.7.0.0.  Vuze is one of several software "clients" available to download and share files using the BitTorrent technology.  (Similarly but perhaps more familiarly, Outlook and Thunderbird are

two software clients for sending and receiving emails.)  BitTorrent is a "peer-to-peer" file-sharing system by which users can identify files they wish to download and automatically download them from other users ("peers") who already have the files downloaded and choose to share them.  After a BitTorrent client downloads a file, it often shares the file with other users seeking to download it.  BitTorrent downloaders thus often become uploaders.

With that brief technical background, we return to the case. The FBI took over the investigation from the Columbia County Sheriff's Office in 2017 and sent two agents to Neiheisel's address. The agents interviewed Neiheisel, but they did not record the interview, which the agents said was usual when the interviewee is not in custody.

Eventually, a grand jury indicted Neiheisel on two counts of distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1).  The case proceeded to trial.

At trial, one of the agents testified that, near the beginning of their interview with Neiheisel at his home in 2017, Neiheisel said he had two laptop-style computers: a work computer and a Microsoft tablet.  The agent recalled that Neiheisel showed the agents the tablet at their request, indicated that he was familiar with file-sharing programs including BitTorrent and that he had used the tablet to download movies such as *Elf*, but denied that BitTorrent was installed on the tablet.

As the testifying agent explained, the agents interviewing Neiheisel then revealed that they were investigating his IP address

for sharing child pornography. When confronted with a list of such files shared from his IP address, Neiheisel "recognized them as ones that he had downloaded." Neiheisel also indicated his knowledge of certain acronyms and other terms used to describe child pornography. And when asked how long he had been downloading child pornography, Neiheisel said "awhile" and "sort of laughed at the same time." Then the agents showed Neiheisel a video that became the subject of his indictment and conviction, which we'll call "File 56." Neiheisel said that he recognized it as one he had downloaded. And Neiheisel also admitted he had accessed child pornography with his tablet but told agents that there "shouldn't be any child pornography on there."

Neiheisel took the stand and testified to a very different interview. He testified that he told the agents he had used the program Vuze to download the movie *Elf* but hadn't heard of the term "BitTorrent" and didn't know how it related to that program. When the agents broached the topic of child pornography, Neiheisel said, he was stunned. After the agents showed him the list of files downloaded at his IP address, he "did not say [he] was familiar with any." And when the agents played some of the videos for him, Neiheisel said that he "had not recognized the videos."

The FBI seized the tablet after the initial interview and obtained a warrant to search it. A forensic examiner, who testified at trial, identified no evidence of child pornography but did find that Vuze, version "5.7.0," was installed and had downloaded other files at the IP address the sheriff's office had flagged. There was

evidence that the device had downloaded *Elf* in late 2015.  A computer forensics expert testified on Neiheisel's behalf and said the device was "as clean as a whistle."

Given the lack of direct evidence of child pornography on Neiheisel's tablet, some arguments at trial concerned Neiheisel's work laptop and whether it could have been the device used to distribute the videos.  Neither party thoroughly investigated the laptop's contents.  Law enforcement never seized the computer, and while the FBI had been in contact with Neiheisel's employer about the laptop, the FBI never sought a search warrant or subpoena for it.  Neiheisel's trial attorney also never had a forensics expert inspect the work laptop and did not introduce it into evidence.

In closing arguments, the Government at times suggested that Neiheisel had used the tablet to download the videos but had removed the evidence.  But the Government also suggested that Neiheisel might have used another computer: "if he used the tablet or if he used another computer that wasn't obtained, it doesn't matter."  Neiheisel, the Government hypothesized, may have "pulled a fast one" by giving the FBI agents the tablet despite knowing he had shared the child-pornographic materials from a different device.  Still, the government did not mention the work laptop.

Neiheisel's attorney, on the other hand, encouraged the jury to infer from the Government's decision not to attempt to search the work laptop that the device was clean. He cross-examined two FBI agents about the work computer and obtained the following information: (1) that the FBI was in contact with Neiheisel's

employer about the work computer, (2) that the employer planned to examine the work computer, and (3) that the FBI never attempted to obtain the work computer.

The jury convicted Neiheisel on both counts of distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1).[1] He raised several grounds for reversal on direct appeal. We dismissed all his arguments except for his ineffective-assistance-of-counsel claims because we thought they were more properly considered on collateral appeal and with a fully developed record. *See United States v. Neiheisel*, 771 F. App'x 935, 943 (11th Cir. 2019) (per curiam). Those claims became the subject of Neiheisel's habeas petition and this appeal.

### B. Habeas Petition

Neiheisel timely filed a habeas petition under 28 U.S.C. § 2255. He raised several claims of ineffective assistance of trial counsel. The district court, adopting the magistrate judge's well-reasoned report and recommendation, denied them all. We discuss the claims relevant to this appeal.

### i. Neiheisel's Work Laptop

One of these claims related to Neiheisel's trial counsel's alleged failure to show that his work laptop did not contain child pornography. Neiheisel argued that his attorney should have done

---

[1] At sentencing, the district court granted the Government's motion to dismiss one count because of a potential multiplicity issue.

more to investigate the laptop and prove that it did not have offending materials.

Neiheisel's trial counsel admitted that he knew that Neiheisel's work supervisor had spoken to the agents and said there was "nothing on the computer of value" to the investigation. And Neiheisel's attorney intended to get this statement on the record while cross-examining the FBI investigators, but "digressed . . . and didn't get to it." Because he expected to use that statement to show that the laptop was clean, Neiheisel's counsel didn't seek to forensically examine the work laptop.

Still, Neihesel's counsel did adduce in cross-examination that the FBI had been in contact with GE about the laptop and had not pursued a search warrant or subpoena for the laptop.

And the Government did not found its case on the notion that the missing child pornography was on Neiheisel's work laptop. Indeed, the Government introduced no evidence suggesting that the work laptop contained child pornography.

Nor did any of the jury's questions during deliberations suggest any interest in the work computer. The magistrate judge observed that the jury probably thought it unlikely that "a person of reasonable intelligence (as Petitioner appeared to be) would use a work computer instead of a personal device to engage in this type of activity."

On this record, the magistrate judge determined that even if Neiheisel's trial counsel's performance had been deficient, it was

not prejudicial because the jury likely did not think Neiheisel had used his work laptop to share child pornography.

### ii.   *The Download Logs and Neiheisel's Alibi*

Neiheisel also raised ineffective-assistance claims related to his counsel's decision not to investigate or present certain evidence about the Torrential Downpour software, the computer records of Neiheisel's file-sharing, and his ostensible travel alibi.

Understanding this claim requires some detail about the Torrential Downpour logs used to show the file-sharing activity at Neiheisel's IP address.  The logs show a series of "connections" between a law-enforcement computer and a device at Neiheisel's IP address in early February of 2016.  Each "connection" is associated with a "start of log" and "end of log," usually about twenty-four hours apart, but the time between the "initial connection" and "end of last connection," and between the "first file downloaded" and "last filed downloaded," is often shorter.  For example, one connection shows a log spanning from 11:32 a.m. on February 7 to 11:46 a.m. on February 8, but the time of initial connection and last connection were 11:32 a.m. and 2:38 p.m. on February 7, and the first and last file downloads were at 1:48 p.m. and 2:35 p.m. that day.

In habeas discovery, Neiheisel also obtained a separate government computer log, the "ICACCOPS log."  This log consists of a list of timestamps, ranging from February 7 at 10:07 p.m. to February 8 at 6:46 a.m., each accompanied by Neiheisel's IP address and a partial "infohash":  a string of letters and numbers used to

identify a particular file, in this case, one the FBI identified as containing child pornography.

It is undisputed that Neiheisel took a flight from Jacksonville to Cincinnati that departed at 8:34 p.m. on Sunday, February 7, 2016. Neiheisel claimed to have taken his tablet with him on that trip. But the various government software logs indicate some sort of activity in the evening of February 7 and morning of February 8. Neiheisel argued that this indicates either a flaw in the government's software or that the file-sharing device in question could not have been his. He contended that his trial counsel provided ineffective assistance by not making this argument and introducing supporting evidence.

The district court disagreed, finding that the logs and evidence of Neiheisel's travel were more likely to confirm Neiheisel's guilt than exonerate him. As the magistrate judge noted, the Torrential Downpour logs indicated that the sheriff's office's computer continued *attempting* to connect to the device at Neiheisel's IP address through the morning of February 8. But the logs indicated the last *successful* connection was at 2:38 p.m. on February 7—a few hours before Neiheisel would have left his home to catch his 8:34 p.m. flight. An FBI agent explained as much. Not only that, but Neiheisel's own computer expert acknowledged this possibility at the habeas hearing. Plus, Torrential Downpour reported finishing the download of File 56—the subject of Neiheisel's conviction—by 9:56 a.m. on February 6.

The magistrate judge therefore concluded that Neiheisel's counsel was not ineffective for choosing not to present evidence of Neiheisel's flight. Not only would doing so not have affected the outcome of his trial, the magistrate judge reasoned, it might have "backfired" by drawing attention to the fact that the pornography-sharing device went offline shortly before Neiheisel's travel.

The ICACCOPS logs—which were introduced only in part and whose meaning was and remains quite vague—did not contradict this. As Neiheisel's expert "assume[d]" and the magistrate judge found, the ICACCOPS logs likely reflect activity by a government computer, rather than the device at Neiheisel's IP address. That is, the ICACCOPS records could well show the same thing as the Torrential Downpour logs: unsuccessful attempts to connect to a file-sharing device extending through February 8.

Neiheisel also argued that Torrential Downpour was generally unreliable and faulted his trial counsel for not seeking to compel production of the software's source code. But the district court found that Neiheisel's trial counsel reasonably relied on his computer expert, who did not mention any potential issues with the Torrential Downpour software or recommend inspecting it. Nor, the court concluded, did Neiheisel's habeas petition identify anything about the software that would compel any competent attorney to investigate it further. And the court said that even if Neiheisel's counsel had moved to obtain the source code, it was "only speculative" that a court would have granted the motion, and it was speculative again that the source code would have provided

evidence helping Neiheisel's case. So the district court rejected that ineffective-assistance claim as well.

### iii.  *This Appeal*

The district court denied all Neiheisel's claims. *Neiheisel v. United States*, 2022 WL 16833629, at \*2 (M.D. Fla. Nov. 9, 2022). Neiheisel then moved this Court for a certificate of appealability ("COA"). A judge of this Court partially granted the COA on the following questions:

> (1) Whether the district court erred in finding that Neiheisel was not prejudiced by counsel's failure to introduce evidence that Neiheisel's work laptop contained no child pornography; and, if so, whether the district court erred also in denying Neiheisel's claim that counsel was ineffective for failing to seek expert review of that computer; and

> (2) Whether the district court erred in finding that counsel was not ineffective for failing to seek inspection of, or discovery related to, specialized government software used at trial to show that child pornography was distributed from Neiheisel's home internet network.

## II.    Standard of Review

On appeal from a district court's denial of a § 2255 motion, we review findings of fact for clear error and questions of law *de novo*. *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). Ineffective-assistance-of-counsel claims are mixed questions of law

and fact that we review *de novo*. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014).

To succeed on an ineffective-assistance-of-counsel claim, a defendant must prove both that his lawyer's performance was deficient and that the deficiency was prejudicial to his case. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). "We may resolve the performance and prejudice prongs in either order and need not address both when denying an ineffectiveness claim." *Ingram v. Warden, Holman Corr. Facility*, 80 F.4th 1304, 1311 (11th Cir. 2023) (quoting *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021)) (cleaned up).

Deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Jones v. United States*, 224 F.3d 1251, 1314 (11th Cir. 2000).

Prejudice occurs when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "less than a preponderance," *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1210 (11th Cir. 2021), but still requires "the

likelihood of a different result [to] be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2001).

### III.    Discussion

On appeal, Neiheisel argues that the district court erred by denying his ineffective-assistance-of-counsel claims. We see no error and affirm.

*i.    The District Court Correctly Denied Neiheisel's Claim About His Work Computer.*

Neiheisel's first claim centers on whether his attorney should have done more to show that his work computer did not contain child pornography. Neiheisel's only known computing devices were his tablet and his work computer, and no child pornography was found on his tablet. In Neiheisel's view, showing that there was also no child pornography on his work laptop would have therefore proved his innocence.

The problem with this theory is that more proof that Neiheisel's work computer did not contain child pornography would not have "alter[ed] the entire evidentiary picture" enough to make a different outcome "reasonably likely." *Strickland*, 466 U.S. at 696.

On the one hand, the trial record already contained some evidence suggesting the work computer did not have child pornography. As Neiheisel's counsel adduced on cross-examination, the FBI communicated with Neiheisel's employer but decided not to seek a search warrant for the work computer. Neiheisel's trial counsel highlighted the Government's "ability to subpoena and

issue search warrants for" the work laptop and its decision not to do so as evidence that the work computer was not the device used to share child pornography.

On the other hand, other evidence pointed to Neiheisel's tablet as the criminal instrument. Torrential Downpour reported downloading the offending files from a device running the file-sharing program Vuze, version "5.7.0.0." The FBI's investigation of the tablet found that it contained Vuze, version "5.7.0"—the same version, minus an extraneous decimal point. The investigators testified to Neiheisel's admission that he downloaded child-pornography videos using the tablet and that he recognized the videos he was charged with downloading. An agent also testified about a subsequent meeting, requested by Neiheisel, at which he indicated his awareness of how file-sharing software worked and said that he had made the "dumb" choice to download child pornography.

To be sure, the Government at times implied that Neiheisel might have used some device other than the tablet to download and share child pornography. But the absence of child pornography on Neiheisel's work computer, no matter how conclusively shown, would not disprove that theory. Indeed, Neiheisel could have had a third device.

In short, enough evidence pointed away from his work computer as the file-sharing device. And counsel argued that the Government's failure to obtain the work laptop suggested it was clean. So we do not think more evidence that the work computer did not contain child pornography would have had a "reasonable

22-13951                    Opinion of the Court                    15

probability" of changing the outcome of the trial.  We therefore affirm the district court's denial of Neiheisel's first ineffective-assistance claim.

> ii.  *The District Court Correctly Denied Neiheisel's Claim About Torrential Downpour and the Download Records.*

Neiheisel's second claim concerns his attorney's approach to investigating the government's software that showed file-sharing activity from his IP address.[2]  He argues that his trial counsel was

---

[2] We note the parties' dispute as to whether Neiheisel's argument on appeal is within the scope of the COA he received.  Our review of a habeas claim is generally "limited to issues specified in the COA."  *Murray v. United States*, 145 F.3d 1249, 1250 (11th Cir. 1998) (per curiam).  However, a COA's enumeration of issues is not a jurisdictional limitation on our authority over the appeal. *Gonzalez v. Thaler*, 565 U.S. 134, 143–45 (2012).  And we retain the ability "in an extraordinary case" to modify the scope of a COA.  *Hodges v. Att'y Gen., State of Fla.* 506 F.3d 1337, 1341–42 (11th Cir. 2007).  The Government argues Neiheisel's briefing is entirely outside the scope of the COA because he focuses on his out-of-town alibi and the interpretation of the Torrential Downpour logs, rather than a generalized issue with the software.  Neiheisel's reply brief confirms that "the Government's interpretation of the connection log" is his concern.  While we likely intended the second issue in the COA to refer to Neiheisel's argument that the government software is generally unreliable, we recognize that the COA's wording was not entirely unambiguous.  This is especially so because Neiheisel's *pro se* motion for a COA focused on his out-of-town alibi and the download logs, rather than a generalized issue with the government's software.  In this unique context, Neiheisel's interpretation of the COA was reasonable.  Because Neiheisel's understanding of the COA was reasonable and the Government will not be prejudiced by our consideration of his argument, we review the second issue as Neiheisel presents it.  *See Hodges*, 506 F.3d at 1341 (indicating that *sua sponte* expansion of the COA may

ineffective for not fully investigating the Torrential Downpour software and not challenging the government's interpretation of the download logs. But for the same reasons as the magistrate judge and district court, we disagree.

To succeed on his claim, Neiheisel needed to show that a more thorough investigation of Torrential Downpour and its logs would have led to evidence having a "reasonable probability" of changing the outcome of the trial. But the additional evidence presented to the habeas court seems only to validate the guilty verdict.

That evidence clearly explains the Torrential Downpour records of computer activity extending into February 8, after Neiheisel had traveled out of state: the logged activity was that of a law-enforcement computer attempting to reconnect with the file-sharing device at Neiheisel's IP address. The actual connection ended in the afternoon of February 7, perhaps when Neiheisel turned off his device and left for the airport. But the law-enforcement computer attempted to reconnect for the rest of its twenty-four-hour connection period. Far from suggesting that the software malfunctioned, misled, or must have been connecting to a different device, the Torrential Downpour logs instead bolster the Government's case.

The ICACCOPS logs—which Neiheisel presented in fragmentary form and with little explanation—also do not help

---

be warranted where there are "confusing circumstances leaving doubt about which issues would be addressed on the merits").

Neiheisel.  As his own expert acknowledged, those logs are at least consistent with the theory that the law-enforcement computer connected with Neiheisel's device on February 7, disconnected around the time he left home, and continued trying to reconnect in vain.

"[A] petitioner must be able to point to evidence of prejudice that amounts to more than mere speculation." *Perkins v. United States*, 73 F.4th 866, 880 (11th Cir. 2023).  Neiheisel has not offered any evidence about the government software and its logs that would have had any likelihood of changing the trial's outcome.  Nor has he given us reason to think that there is other evidence out there that a more thorough investigate would have produced and that would have had a meaningful impact on the proceedings.  Because Neiheisel's trial counsel's conduct did not prejudice his case, the district court correctly denied Neiheisel's claims underlying the second issue in the COA.

## IV.    Conclusion

For these reasons, we affirm the judgment of the district court.

**AFFIRMED.**